2179-1
Of Counsel:
BURKE McPHEETERS BORDNER & ESTES

WILLIAM A. BORDNER 1371-0
JAMES T. ESTES, JR. 2000-0
DAVID Y. SUZUKI 6761-0
Suite 3100 - Mauka Tower
Pacific Guardian Center
737 Bishop Street
Honolulu, Hawaii 96813
Telephone No. (808) 523-9833
Fax No. (808) 528-1656
bborder@bmbe-law.com
jestes@bmbe-law.com
dsuzuki@bmbe-law.com

STITES & HARBISON, PLLC

JOHN L. TATE
SARAH G. CRONAN
400 West Market Street, Suite 1800
Louisville, Kentucky  40202-3352
Telephone No. (502) 681-0543
Fax No. (502) 779-8278
scronan@stites.com
jtate@stites.com

Attorneys for Defendant, Third-Party
Defendant and Fourth-Party Plaintiff
JAMES CASH MACHINE COMPANY, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DENISE GENDROW, Individually and as Personal Representative of THE ESTATE OF CHARLES EUGENE | CIVIL NO.  CV03 00034 BMK (Other Non-Vehicle Tort) |

| | |
|---|---|
| GENDROW, JR.; CHARLES E. GENDROW, III,<br><br>        Plaintiffs,<br><br>vs.<br><br>SIMON MATTRESS MANUFACTURING COMPANY dba SERTA MATTRESS COMPANY dba COYNE MATTRESS MANUFACTURING COMPANY; JAMES CASH MACHINE CO.,<br><br>        Defendants. | DEFENDANT, THIRD-PARTY DEFENDANT AND FOURTH-PARTY PLAINTIFF JAMES CASH MACHINE CO.'S CONCISE STATEMENT OF FACTS IN RESPONSE TO SIMON MATTRESS MANUFACTURING COMPANY'S MOTION FOR SUMMARY JUDGMENT<br><br>HRG DATE: February 8, 2006<br>     TIME: 10:00 AM<br>   JUDGE: The Honorable Barry M. Kurren |
| SIMON MATTRESS MANUFACTURING COMPANY,<br><br>        Defendant and Third-Party Plaintiff,<br><br>vs.<br><br>JAMES CASH MACHINE CO., a Kentucky Corporation,<br><br>        Third-Party Defendant. | JUDGE:<br>Magistrate Judge Barry M. Kurren<br><br>TRIAL DATE:<br>May 16, 2006 |
| JAMES CASH MACHINE CO., a Kentucky Corporation,<br><br>        Defendant and Fourth-Party Plaintiff, | |

|                                                    |
| -------------------------------------------------- |
| vs.<br><br>A & B ELECTRIC CO., INC., a Hawaii Corporation,<br><br>    Fourth-Party Defendant. |

### DEFENDANT, THIRD-PARTY DEFENDANT AND FOURTH-PARTY PLAINTIFF JAMES CASH MACHINE CO.'S CONCISE STATEMENT OF FACTS IN RESPONSE TO SIMON MATTRESS MANUFACTURING COMPANY'S MOTION FOR SUMMARY JUDGMENT

Defendant, Third-Party Defendant and Fourth-Party Plaintiff JAMES CASH MACHINE COMPANY, INC. ("JCM"), by and through its attorneys, STITES & HARBISON and BURKE MCPHEETERS BORDNER & ESTES and pursuant to LR 56.1(b), hereby submits its separate concise statement of additional facts in response to Simon Mattress Manufacturing Company's Motion for Summary Judgment. Unless otherwise stated, references to exhibits are to those attached to JCM's Motion for Summary Judgment filed on December 14, 2005. JCM also adopts and incorporates the facts set forth in support of its motion for summary judgment in response.

| No. | Facts | Evidentiary Support |
|---|---|---|
| 1. | On January 9, 2001, Mr. Gendrow attempted to repair the motor, by rewinding it, but was unsuccessful. He informed Malcolm Barcarse, the president of A&B Electric, that a new motor was needed. Mr. Barcarse called Mr. Lee at Coyne Mattress and informed him that a new motor was needed. Mr. Lee gave the go ahead to obtain a new motor. Mr. Gendrow called a distributor on the mainland and placed an order for a replacement motor using the identifying numbers on the motor he had removed. He asked that the motor be shipped to the Coyne Mattress address in Waipahu. | Exhibit F, Buffington report, pp. 6-7. |
| 2. | On January 15, 2001, at 11:00 a.m., UPS delivered the replacement motor to Coyne Mattress Company. A&B Electric was called and told that the motor had arrived. Mr. Barcarse said he would send Mr. Gendrow after lunch to install it. Mr. Gendrow told Mr. Barcarse it would take about one hour to install the new motor on the table. Mr. Gendrow arrived at Coyne at 1:00 p.m., obtained the new motor, and went into the cutting room to the table. According to Mr. Valdez [a Coyne Mattress employee], the top of the table was in the raised position at this time. | Exhibit F, Buffington report, p. 7. |

| No. | Facts | Evidentiary Support |
|---|---|---|
| 3. | At 2:00 p.m., Mr. Gendrow found Mr. Valdez at the loading dock and told him that the new motor did not fit. Both returned to the cutting table where Mr. Gendrow showed Mr. Valdez that the boltholes in the motor casing did not match the mounting holes in the frame. Mr. Gendrow said he had measured the mounting holes in the casing of the table lift motor and found that it would fit. Mr. Gendrow said he was going to remove the table lift motor and use it for the lift step and would use the new motor for the table lift. After this conversation, Mr. Valdez returned to the loading dock. About 2:30 p.m., the employees in the sewing room heard a loud bang. The tilt top table was down and Mr. Gendrow was pinned under it. | Exhibit F, Buffington report, pp. 7-8. |
| 4. | There are four (4) bolts, which secure the lifting motor to the frame. Mr. Gendrow (the victim) had removed the two lower bolts; he then began to loosen the two top bolts. As he did this the restraining ability of the motor mount was compromised. The weight of the tabletop caused the shaft to try to turn. This caused the loosened motor to shift to the side on which the drive sprocket was mounted. When the motor shifted the chain slipped off the sprocket and the table came down crushing Mr. Gendrow's head between a supporting metal beam on the underside of the tabletop and the support frame. The table controls and breaker panel are located on the right side of the table, as you face it, within the frame bolts. | Exhibit F, Buffington report, p. 8. |

| No. | Facts | Evidentiary Support |
|---|---|---|
| 5. | In this instance, Mr. Gendrow and the Simon maintenance man should have discussed the potential hazard of removing the tabletop lift motor.  Had this been done, the hazard would have been readily recognized, the tabletop secured and the accident avoided. | Exhibit F, Buffington report, p. 9. |
| 6. | Mr. Gendrow's decision to remove the motor that provided the inherent stability of the tilted table, was made impromptu; that is, his initial work plan was to simply change out the step motor, as the table motor was functioning properly.  The point to be made is that because Mr. Gendrow made such an impromptu decision/change of work plans, he failed to properly consider the potential consequences and/or hazards associated with such actions. | Exhibit H, Report of Richard Gill, Ph.D., p. 5. |
| 7. | The accident arose because of Mr. Gendrow's attempted removal of the table motor from its secured position without first insuring that the table would remain in position and that initiation of such action was first and foremost Mr. Gendrow's responsibility under accepted maintenance practices set forth in OSHA and ANSI standards. | Exhibit G, Report of Peter Schwalje, p. 3. |
| 8. | "This accident is a consequence of Mr. Gendrow not recognizing, or failing to account for the fact, that the disassembly he was conducting, removing the table-tilt motor, would allow the table to rotate from the tipped-up to the horizontal position." | Exhibit 1, Report of Raymond Merla, p.11. |

DATED:  Honolulu, Hawaii, January 20, 2006.

                 /s/ David Y. Suzuki
WILLIAM A. BORDNER
JAMES T. ESTES, JR.
DAVID Y. SUZUKI
JOHN L. TATE
SARAH G. CRONAN
Attorneys for Defendant, Third-Party
Defendant and Fourth-Party Plaintiff
JAMES CASH MACHINE COMPANY, INC.