2179-1
Of Counsel:
BURKE McPHEETERS BORDNER & ESTES

WILLIAM A. BORDNER 1371-0
JAMES T. ESTES, JR. 2000-0
DAVID Y. SUZUKI 6761-0
Suite 3100 - Mauka Tower
Pacific Guardian Center
737 Bishop Street
Honolulu, Hawaii 96813
Telephone No. (808) 523-9833
Fax No. (808) 528-1656
bborder@bmbe-law.com
jestes@bmbe-law.com
dsuzuki@bmbe-law.com

STITES & HARBISON, PLLC

JOHN L. TATE
SARAH G. CRONAN
400 West Market Street, Suite 1800
Louisville, Kentucky 40202-3352
Telephone No. (502) 681-0543
Fax No. (502) 779-8278
scronan@stites.com
jtate@stites.com

Attorneys for Defendant, Third-Party
Defendant and Fourth-Party Plaintiff
JAMES CASH MACHINE COMPANY, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DENISE GENDROW, Individually and as Personal Representative of THE ESTATE OF CHARLES EUGENE | CIVIL NO. CV03 00034 BMK (Other Non-Vehicle Tort) |

|  |  |
|---|---|
| GENDROW, JR.; CHARLES E. GENDROW, III,<br><br>                Plaintiffs,<br><br>    vs.<br><br>SIMON MATTRESS MANUFACTURING COMPANY dba SERTA MATTRESS COMPANY dba COYNE MATTRESS MANUFACTURING COMPANY; JAMES CASH MACHINE CO.,<br><br>                Defendants. | DEFENDANT, THIRD PARTY DEFENDANT AND FOURTH PARTY PLAINTIFF, JAMES CASH MACHINE COMPANY, INC.'S RESPONSE TO DEFENDANT, THIRD PARTY PLAINTIFF, SIMON MATTRESS MANUFACTURING COMPANY'S MOTION FOR SUMMARY JUDGMENT; CERTIFICATE OF SERVICE |
| SIMON MATTRESS MANUFACTURING COMPANY,<br><br>                Defendant and Third-Party Plaintiff,<br><br>    vs.<br><br>JAMES CASH MACHINE CO., a Kentucky Corporation,<br><br>                Third-Party Defendant. | HRG DATE: February 8, 2006<br>TIME:          10:00 AM<br>JUDGE:       The Honorable<br>                    Barry M. Kurren<br><br>JUDGE:<br>Magistrate Judge Barry M. Kurren<br><br>TRIAL DATE:<br>May 16, 2006 |
| JAMES CASH MACHINE CO., a Kentucky Corporation,<br><br>                Defendant and Fourth-Party Plaintiff,<br><br>    vs. |  |

| | |
|---|---|
| A & B ELECTRIC CO., INC., a Hawaii Corporation,<br><br>　　　　　　　Fourth-Party Defendant. | |

**DEFENDANT, THIRD PARTY DEFENDANT AND FOURTH PARTY PLAINTIFF, JAMES CASH MACHINE COMPANY, INC.'S RESPONSE TO DEFENDANT, THIRD PARTY PLAINTIFF, SIMON MATTRESS MANUFACTURING COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Third Party Defendant and Fourth Party Plaintiff, James Cash Machine Company, Inc. ("JCM"), by counsel, STITES & HARBISON, PLLC and BURKE MCPHEETERS BORDNER & ESTES, submits this response to the Motion of Simon Mattress Manufacturing Company d/b/a Serta Mattress Company d/b/a Coyne Mattress Manufacturing Company (hereinafter "Simon") for Summary Judgment.

### INTRODUCTION

JCM agrees with essential factual premise of Simon's motion for summary judgment. Mr. Gendrow's decision to remove the tilt table motor without accounting for the stored energy of the table was the cause-in-fact of the accident that caused his death. Plaintiff's own expert admits Mr. Gendrow's failure to identify the hazard (*i.e.*, release of the stored energy from the tilt table in the vertical position) caused the accident. *See* Report of Gary Buffington

-3-

("Buffington report"), p. 9, attached as Exhibit F to JCM's summary judgment motion and memorandum. Since all the parties agree on this crucial fact, Plaintiffs should not be able to recover from either JCM or Simon as a matter of law.

JCM does not agree with all the legal conclusions in Simon's summary judgment motion. Simon's interpretation of the facts set forth in Buffington's report does not necessarily support the conclusion that Simon did not supervise or control the work performed by Mr. Gendrow; and, the obvious hazard created by removing the sole mechanical support for the tilt table cannot fairly be characterized as "unknown" or "unrecognized."

### STATEMENT OF RELEVANT FACTS

According to Plaintiff's witness, Gary Buffington, Mr. Gendrow arrived at Simon at 1:00 p.m. on January 15, 2001, to install a new lift step motor on the tilt top table. The tilt table is used by mattress manufacturers to cut material for bedding. The subject tilt table was manufactured by JCM's predecessor and sold to Simon in 1968.[1]

Between 1:00 p.m. and 2:00 p.m. on January 15, 2001, Mr. Gendrow determined that the new motor would not fit in the lift step motor frame. He reportedly located Mr. Valdez, a Coyne Mattress employee, at the loading dock and informed him of this fact. Mr. Gendrow and Mr. Valdez returned to the tilt

---

[1] While JCM adopts Plaintiffs' version of the facts related to the accident as set forth in Mr. Buffington's November 14, 2005 report for purposes of its motion and this response, JCM does not admit that Mr. Buffington is qualified to render expert opinions in this case or that his opinions are admissible.

table where Mr. Gendrow showed him that the motor casing for the new motor did not match the mounting holes in the frame.  Mr. Gendrow explained to Mr. Valdez that he had measured the mounting holes in the casing of the table lift motor and found that it would fit.  The two men discussed removing the tilt table motor and using it for the lift step.  Mr. Valdez then returned to the loading dock and Mr. Gendrow commenced the work.

At approximately 2:30 p.m., Coyne Mattress employees heard a loud bang and Mr. Gendrow was discovered pinned under the tilt top table.  The table had rotated from a vertical to a horizontal position after Mr. Gendrow loosened bolts holding the motor—and the tilt table—in place.

Buffington concludes that if Mr. Gendrow considered the hazard associated with removal of the tilt table motor with the table in a vertical position, the danger would have been readily recognized and the accident avoided.  Similarly, Rick Gill, an expert on human factors, noted that: "Mr. Gendrow's decision to remove the motor that provided the inherent stability of the tilted table, was made impromptu; that is his initial work plan was simply to change out the step motor, as the table motor was functioning properly.  The point to be made is that because Mr. Gendrow made such an impromptu decision/change of work plans, he failed to properly consider the potential consequences and/or hazards associated with such actions." *See* Gill Report, Exhibit H to JCM's Motion, p. 5.

Peter Schwalje, an experienced mechanical engineer, determined that the accident arose because of Mr. Gendrow's attempted removal of the table motor without first insuring that the table would remain fixed and immobile; taking this simple precaution was first and foremost Mr. Gendrow's responsibility per the accepted maintenance practices set forth in OSHA regulations and ANSI standards. *See* Report of Peter Schwalje ("Schwalje Report"), attached as Exhibit G to JCM's summary judgment motion, p. 3.

As Simon's own engineering witness concluded: "This accident is a consequence of Mr. Gendrow not recognizing, or failing to account for the fact, that the disassembly he was conducting, removing the table-tilt motor, would allow the table to rotate from the tipped-up to the horizontal position." Report of Raymond Merla ("Merla Report"), attached as Exhibit 1 to JCM's Concise Statement of Facts in Response to Simon's Motion for Summary Judgment, p. 11.

## ARGUMENT

Summary judgment shall be granted if the court determines there is no genuine issue of material fact and that the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c*). See also Rossi v. Motion Picture Assn of America*, 2003 U.S. Dist. LEXIS 12864, * 5 (D. Haw. April 29, 2003), attached at Tab A, *aff'd.* 391 F.3d 1000 (9th Cir. Haw. 2004). In assessing the existence of a genuine issue of material fact, the court must resolve

all ambiguities and draw all factual inferences in favor of the moving party. *Rossi*, 2003 U.S. Dist LEXIS 12864 at *5. The court must not try issues of fact; rather, it is to determine if there are issues to be tried. *Id*. at * 5-6. Summary judgment is improper, however, if there is evidence in the record from which a reasonable inference can be drawn in favor of the non-moving party. *Id*. at * 6.

    **A.**    **JCM And Simon Are Entitled To Summary Judgment Because It Is Undisputed That Mr. Gendrow's Decision To Remove The Motor Holding Up The Tilt Table Was The Cause-In–Fact of the Accident.**

Simon contends that it cannot be liable as a matter of law for dangerous conditions created by or arising out of the manner or method in which Mr. Gendrow prosecuted the work on the tilt table. In support, Simon relies on the holding in *Taira v. Ohau Sugar Company,* 1 Haw. App. 208, 616 P.2d 1026 (Haw. Ct. App. 1980). In *Taira*, an independent contractor was hired to renovate the stool drum area of a cane cleaner owned by Oahu Sugar Company. *Id*. at 209, 616 P.2d at 1028. A foreman employed by the independent contractor supervised the method and manner of the work performed by the other independent contractors, including devising the procedure to create a 30 foot high platform from which to work. *Id*. at 210, 616 P.2d at 1028-29. While sitting on the makeshift platform during the course of performing the repair work, the platform gave way and Taira fell and sustained serious injury. *Id*. The dangerous condition that caused the

injury in *Taira* was the makeshift platform constructed by the independent contractors to perform the repair work.

Similarly, JCM moved for summary judgment on the ground that Plaintiff cannot demonstrate the presence of a "defect" that rendered the tilt table unreasonably dangerous for its intended (and reasonably foreseeable) use, nor can Plaintiffs demonstrate the alleged defect was the proximate cause of Mr. Gendrow's death. *See* JCM's Memorandum in Support of Motion for Summary Judgment, pp. 11-23. When the alleged dangerous condition was created by Plaintiff's deliberate modification of the product, Plaintiffs cannot establish a prima facie case of third party liability. *See* Tabieros v. Clark Equipment Co., 85 Hawaii 336, 364, 944 P.2d 1279, 1307 (1997) and Exxon v. Sofec, 517 U.S. 830, 116 S. Ct. 1813, 135 L. Ed. 2d 113 (1996). The law does not impose a duty to warn of a hazard that would not exist but for the Plaintiff's decision to create the hazard in the first instance. *See* Exxon, 517 U.S. at 839-40, 116 S. Ct. 1819 (holding that when the injured party is the sole proximate cause of the damage complained of, that party cannot recover from tortfeasors or contracting partners whose actions or breaches were mere causes in fact, not the proximate cause of Plaintiff's injury).

Further, Mr. Gendrow was a user with sophisticated and specialized knowledge of the machinery on which he was working; and, unlike in the case

involving an ordinary consumer product, there is no duty to warn a professional aware of the characteristics of the product who knows or should know of a potential danger.  *See* Restatement (Second) of Torts § 388 (1965); Strong v. E.I. DuPont De Nemours and Co., Inc., 667 F.2d 682 (8th Cir. 1981); Bergfeld v. Unimin Corp., 319 F.3d 350 (8th Cir. 2003); Martinez v. Dixie Carriers, Inc., 529 F.2d 457 (5th Cir. 1976); Littlehale v. E.I. DuPont De Nemours & Co., 268 F. Supp. 791 (S.D.N.Y. 1966), affirmed, 380 F.2d 274 (2nd Cir. 1967); and Goodbar v. Whitehead Brothers, 591 F. Supp. 552 (W.D. Va. 1984), affirmed, 769 F.2d 213 (4th Cir. 1985)**.**

Simon and JCM agree that the dangerous condition was created by Mr. Gendrow when he decided to modify the tilt table by removing the tilt table motor.  Not only do the facts support this conclusion, so does Plaintiff's only product liability witness.  This Court should find this fact legally determinative and enter summary judgment as a matter of law in favor of JCM and Simon.

**D.  Although Key Facts Are Not In Dispute, JCM Differs On Certain Legal Conclusions.**

Notwithstanding that the parties agree that the accident occurred due to a hazard of Mr. Gendrow's making, JCM disagrees with at least two legal conclusions asserted in Simon's summary judgment motion.  Simon contends that it owed no legal duty to Mr. Gendrow based upon its characterization of certain facts relating to the conduct of Mr. Gendrow's work.  Simon suggests that

Mr. Gendrow acted "unilaterally" in making the modification to the tilt table. Simon's conclusion overlooks the involvement of its own employee, Mr. Valdez, and the inferences that can be drawn there from--Mr. Gendrow's contact with Mr. Valdez before proceeding.  *See* JCM's Concise Statement of Facts in response to Simon's Motion for Summary Judgment.  Simon does not (perhaps cannot) account for why Mr. Gendrow did what he did, or the information Mr. Gendrow obtained from Mr. Valdez before going forward, or whether the discussion between Mr. Valdez and Mr. Gendrow resulted in any change in Mr. Gendrow's plan.  *See* Moffitt v. USA, et al., 1992 U.S. App. LEXIS 30074, * 11-12 (9th C.A. November 4, 1992) (determination of the nature and extent of control by an employer of an independent contractor is made by consideration of all the circumstances including contractual provisions and evidence of actual control).

      Simon also contends that it cannot be liable because the evidence does not establish that it recognized or knew about the plain hazard created by a steel frame being held in a vertical position by one motor attachment.  Yet, Simon knew that the tilt table (purchased in 1968 and operated for 30 years) was in a vertical position when Mr. Gendrow began his work.  There is certainly evidence that the nature of the hazard was open and obvious.

## CONCLUSION

For the reasons set forth herein, the determinative fact of record—the cause-in-fact of the accident—was Mr. Gendrow's decision to modify the tilt table by removing the tilt motor thereby compromising the inherent stability of the table top.  Consensus on this fact alone requires the entry of summary judgment in favor of defendants.  Summary judgment is not appropriate on the other legal grounds raised by Simon's motion, however, since the facts of record can support different legal conclusions.

DATED:  Honolulu, Hawaii, January 20, 2006.

        /s/ David Y. Suzuki
WILLIAM A. BORDNER
JAMES T. ESTES, JR.
DAVID Y. SUZUKI
JOHN L. TATE
SARAH G. CRONAN
Attorneys for Defendant, Third-Party Defendant and Fourth-Party Plaintiff
JAMES CASH MACHINE COMPANY, INC.