ORIGINAL

CHRISTOPHER S. BOUSLOG  3087-0
Law Offices of Chris Bouslog
Four Waterfront Plaza, Suite 480
500 Ala Moana Boulevard
Honolulu, Hawaii  96813-4908
Telephone: (808) 550-4995
Facsimile: (808) 550-4996

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 20 2006

at 6 o'clock and 10 min. PM
SUE BEITIA, CLERK

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DENISE GENDROW, Individually and as Personal Representative of THE ESTATE OF CHARLES EUGENE GENDROW, JR.; and CHARLES E. GENDROW III,<br><br>Plaintiffs,<br><br>vs.<br><br>SIMON MATTRESS MANUFACTURING COMPANY dba SERTA MATTRESS COMPANY dba COYNE MATTRESS MANUFACTURING COMPANY; JAMES CASH MACHINE CO.;<br><br>Defendants. | ) CIVIL NO. CV03 00034 BMK<br>) (Other Non-Vehicle Tort)<br>)<br>) **PLAINTIFFS DENISE GENDROW, Individually and as Personal Representative of THE ESTATE OF CHARLES EUGENE GENDROW, JR.; and CHARLES E. GENDROW III'S SEPARATE AND CONCISE STATEMENT OF FACTS IN OPPOSITION TO DEFENDANT AND THIRD-PARTY PLAINTIFF SIMON MATTRESS MANUFACTURING COMPANY'S MOTION FOR SUMMARY JUDGMENT FILED 12/05/05; DECLARATION OF COUNSEL; DECLARATION OF GARY L. BUFFINGTON; EXHIBITS "A"-"E"; CERTIFICATE OF SERVICE**<br>)<br>) **Hearing Date: February 8, 2006**<br>) **Time: 10:00 a.m.**<br>) |

```
SIMON MATTRESS MANUFAC-        )
TURING COMPANY,                )
                               )
        Third-Party Plaintiff, )
                               )
vs.                            )
                               )
JAMES CASH MACHINE CO.,        )
                               )
        Third-Party Defendant. )   TRIAL WEEK: MAY 16, 2006
_____)
JAMES CASH MACHINE CO.,        )
                               )
        Fourth-Party Plaintiff,)
                               )
vs.                            )
                               )
A & B ELECTRIC,                )
                               )
        Fourth-Party Defendant.)
_____)
```

**PLAINTIFFS DENISE GENDROW, Individually and as Personal Representative of THE ESTATE OF CHARLES EUGENE GENDROW, JR.; and CHARLES E. GENDROW III'S SEPARATE AND CONCISE STATEMENT OF FACTS IN OPPOSITION TO DEFENDANT AND THIRD-PARTY PLAINTIFF SIMON MATTRESS MANUFACTURING COMPANY'S MOTION FOR SUMMARY JUDGMENT FILED 12/2/05**

Pursuant to Rule LR 56.1 of the Local Rules of Practice for the

United States District Court, District of Hawaii, Plaintiffs DENISE

GENDROW, Individually and as Personal Representative of THE ESTATE

2

OF CHARLES EUGENE GENDROW, JR.; and CHARLES E. GENDROW III (hereinafter "Plaintiffs") hereby submit their separate and concise statement of material facts in opposition to Defendant and Third-Party Plaintiff SIMON MATTRESS MANUFACTURING CO.'s (hereinafter "SIMON") Motion for Summary Judgment filed December 2, 2005.

Facts 1 - 5 correspond to the facts and supporting evidence presented in Defendant and Third-Party Plaintiff Simon's Separate Concise Statement of the Facts filed December 5, 2005. Where appropriate, Plaintiffs have indicated that the facts relied upon by Defendant and Third-Party Simon are controverted, states the factual bases for such controversion and cites to the appropriate evidentiary support for same. These are followed by additional material facts and supporting evidence that Plaintiffs introduce to demonstrate the existence of the many genuine issues of material fact.

**PLAINTIFFS DENISE GENDROW, Individually and as Personal Representative of THE ESTATE OF CHARLES EUGENE GENDROW, JR.; and CHARLES E. GENDROW III'S RESPONSE TO DEFENDANT and THIRD-PARTY PLAINTIFF SIMON MATTRESS MANUFACTURING CO.'S STATEMENT OF FACTS**

|   | DEFT & 3RD-PTY PLTF SIMON'S ALLEGED FACTS | PLTFS' RESPONSE & EVIDENTIARY SUPPORT |
|---|---|---|
| 1. | TIME LINE OF EVENTS The following is a time line progression of events leading to the accident January 15, 2001 (all times are approximate). Monday, January 8, 2001: Electric Motor for the lift step on the DRC Corp tilt top cutting table was not working. A&B is called and Mr. Gendrow is sent to check the motor. Mr. Gendrow checked the motor and found it was burned out. He then removed the motor and took it to A&B's work shop to see if the motor could be rewound. Tuesday, January 9, 2001: Mr. Gendrow attempted to repair the motor, by rewinding it, but was unsuccessful. He informed Malcolm Barcarse, the president of A&B Electric, that a new motor was needed. Mr. Barcarse called Mr. Lee at |   |

Coyne Mattress and informed him that a new motor was needed. Mr. Lee gave the go ahead to obtain a new motor. Mr. Gendrow called a distributor on the mainland and placed an order for a replacement motor using the identifying numbers on the motor he had removed. He asked that the motor be shipped to the Coyne Mattress address in Waipahu.

Monday, January 15, 2001: At 11:00 a.m., UPS delivered the replacement motor to Coyne Mattress Company. A&B Electric was called and told that the motor had arrived. Mr. Barcarse said he would send Mr. Gendrow after lunch to install it. Mr. Gendrow told Mr. Barcarse that it would take about one hour to install the new motor on the table. Mr. Gendrow arrived at Coyne at 1:00 p.m., obtained the new motor, and went into the cutting room to the table. According to Mr. Valdez [a Coyne employee], the top of the table was in the raised position at this time. At 2:00 p.m., Mr. Gendrow found Mr.

Valdez at the loading dock and told him that the new motor did not fit. Both returned to the cutting table where Mr. Gendrow showed Mr. Valdez that the bolt holes in the motor casing did not match the mounting holes in the frame. Mr. Gendrow said he had measured the mounting holes in the casing of the table lift motor and found that it would fit. Mr. Gendrow said he was going to remove the table lift motor and use it for the lift step and would use the new motor for the table lift. After his conversation, Mr. Valdez returned to the loading dock. About 2:30 p.m., the employees in the sewing room head a loud bang. The tilt top table was down and Mr. Gendrow was pinned under it.

Event
On January 15, 2001, at approximately 2:45 p.m., Charles E. Gendrow, Jr. received fatal injuries while removing a table lift electric motor when the vertical cutting table unintentionally dropped to a horizontal position crushing Mr. Gendrow's head

between a supporting metal beam of the underside of the table top and the support frame.

### Cause of Event

The tilt top table is used to cut fabric for mattresses according to Donald Lee, the operations' manager for Coyne Mattress Manufacturing Company. The top of the table is raised by an electric motor mounted on a support in the center of the frame. It raises the table through a sprocket and chain assembly, which drives a shaft. The shaft has gears on either end, which mesh with gear bars on the sides of the table, which raised and lower it. According to Mr. Lee the table top is left up to facilitate movement in the area. When the table is down it rests on the frame but when raised it is only held in position by the motor. There is not other system to secure the table when it is up. The lift step in the front of the machines allows an employee to be lifted to work on the fabric being layered for a mattress top.

There are four (4) bolts, which secure the lifting motor to the frame. Mr. Gendrow (the victim) had removed the two lower bolts; he then began to loosen the two top bolts. As he did this the restraining ability of the motor mount was compromised. The weight of the table top caused the shaft to try to turn. This caused the loosened motor to shift to the side on which the drive sprocket was mounted. When the motor shifted the chain slipped off the sprocket and the table came down crushing fMr. Gendrow's head between a supporting metal beam on the underside of the table top and the support frame. The table controls and breaker panel are located on the right side of the table, as you face it, within the frame bolts.

2. This case arises out of the January 15, 2001 death of electrician Charles Gendrow, Jr. ("Gendrow") at Simon's mattress manufacturing facility in Waipahu, Hawaii.

3. At the time of the accident, the business was operated under the name of Coyne Mattress

("Coyne").

4. Gendrow was employed by Fourth-Party Defendant A&B Electric Company ("A&B") (an independent contractor to Simon).

5. Gendrow died while in the process of repairing a tilt-top mattress pad cutting table owned by Simon and utilized in its mattress manufacturing operation. *Id.*

Plaintiffs also contend that the following additional material facts and events are relevant or in dispute.

## PLAINTIFFS' STATEMENT OF FACTS IN OPPOSITION

| FACTS/RELEVANT EVENTS | EVIDENTIARY SUPPORT |
|---|---|
| 1. SMMC has a written Lock Out-Tag Out program | Report of Gary L. Buffington. Exhibit "A". |
| 2. SMMC did not conduct an annual or more frequent inspection to ensure that the procedures and requirements of the Lock Out - Tag Out standards were followed. | Report of Gary L. Buffington. Exhibit "A". |
| 3. SMMC did not certify that periodic inspections of the energy control procedures had been performed pursuant to the Lock Out - Tag Out | Report of Gary L. Buffington. Exhibit "A". |

9

standard.

| | | |
|---|---|---|
| 4. | SMMC did not ensure that the Lock Out - Tag Out programs were followed. | Report of Gary L. Buffington. Exhibit "A". |
| 5. | SMMC did not prepare a Job Hazard Analysis on the maintenance and repair work performed on the tilt top mattress cutting table and electric motors. | Report of Gary L. Buffington. Exhibit "A". |
| 6. | SMMC received multiple HOSHA citations for Lock Out - Tag Out violations related to this accident. | Report of Richard T. Gill at 4. Exhibit "B". Deposition of Ceronda Enocencio. Exhibit "C". |
| 7. | The failure of SMMC to comply with minimum OSHA Lock Out - Tag Out requirements was a cause of the accident. | Report of Richard T. Gill at 3. Exhibit "B". |
| 8. | The cutting table was normally kept in that position so that it would take up less space. | Deposition of Donald Erwin Lee at 89. Exhibit "D". |
| 9. | SMMC breached duties to conduct effective Job Hazard Analyses and to ensure that the Lock Out - Tag Out programs were followed and these breaches were causes of the death. | Report of Gary Buffington; and, Supplemental Report of Gary Buffington at 15. Exhibit "A". |
| 10. | If SMMC had done an effective initial LOTO audit it would have identified the removal of the table top lift motor as a | Report of Gary Buffington at page 9, Supplemental Report of Gary Buffington at pages 5-7, 10-11, 14, 15. Exhibit "A". |

| | | |
|---|---|---|
| | hazard requiring the top to be tied off or the step raised to prevent it from falling. SMMC's LOTO program was deficient and had an audit been done this accident would not have happened. | |
| 11. | It is Mr. Buffington's opinion that "if either DRC Corp. Or Coyne Mattress had used the required hazard assessment or Job Safety Analysis procedures properly, the gravitational hazard most likely would have been recognized, the lift table most likely would have been secured in some manner or lowered to a horizontal position and this accident would have been prevented." | Supplemental Report of Gary Buffington at page 15. Exhibit "A". |
| 12. | Lorenzo Valdez was an employee of SMMC who maintained the equipment. | Deposition of Donald Erwin Lee at 67, 72. Exhibit "D". |
| 13. | The equilibrium or zero energy position of the table is obviously biased to the horizontal position absent application of some outside force because the pivot position of the table is off center and closer to the step end of the table. | Report of Peter Schwalje at 3. Exhibit "E". |

DATED: Honolulu, Hawaii, January 20, 2006.

_____
CHRIS BOUSLOG
Attorney for Plaintiffs