

**Applied Cognitive Sciences**

Human Factors
Engineering

A CONSULTING GROUP

December 13, 2005

Paul Yamamura
Yamamura & Shimazu
Suite 1770 Central Pacific Plaza
220 South King Street
Honolulu, Hawaii  96813

**Re: Gendrow, et al. vs. Coyne Mattress et al.**

Dear Mr. Yamamura:

The purpose of this letter is to summarize my findings and opinions to date concerning Mr. Gendrow's accident when working on a DRC tilt table designed to assist in cutting fabric for making mattresses.  In arriving at my opinions I have relied on my training, experience, and expertise in the fields of Systems Engineering, Mechanical Engineering, Human Factors Engineering, Safety, and Risk Management.

In addition, I also reviewed and relied upon the following, any and all of which I may use in trial to illustrate my testimony:
1. Deposition of Mr. Cash
2. Deposition of Mr. Barcarse
3. Deposition of Donald Lee
4. Honolulu Police Department Report
5. Labor and Industry/OSHA Report
6. HOSH Report pertaining to A & B Electric
7. HOSH Report pertaining to Coyne Mattress Company
8. Miscellaneous color photographs
9. Miscellaneous discovery documents
10. Buffington Report
11. Affiliated Engineering Laboratories Report
12. Miscellaneous sales records
13. Inspection of two similar DRC tilt tables

Attached as an exhibit to this report is a copy of my CV that highlights my training, experience, and expertise, along with a list of my publications.  Also attached is a listing of my sworn testimony for the past 5 years.  Please note that my fees for work on this matter, is $300/hour plus expenses; sworn testimony fees are $350/hour, unless paid in advance, with a minimum charge of $1,000.  Commercial flight time is billed at half-rate.

# EXHIBIT "B"

2104 West Riverside • Spokane, WA 99201 • 509-624-3714 telephone/fax

Opinion 1: The subject tilt table was designed and manufactured in a reasonably safe condition; there were no design or manufacturing defects that contributed to this accident.

Basis for Opinion 1: It has been alleged that the subject machine was defective because its design did not include provisions for lock out/tag out (LOTO). Such allegations are false for two reasons: (1) The machine did not need any additional features in order to properly and safely achieve LOTO; and (2) At the time of manufacture, LOTO was not state of the art for such equipment.

The design of the subject tilt table was quite simple. In short, it was comprised of two relatively small electric motors (i.e. 1/4 to 1/3 HP), each of which, in essence, moved a single component (i.e. the step or the table). LOTO requires locking out all energy sources and isolating all forms of stored energy. As is the custom and practice in LOTO, the energy sources to machines (i.e. the electrical power in this case) are locked out at the source of the power (i.e. junction box, fuse panel, MCC, etc.), which is remote to and not part of the actual equipment to be LOTO. With respect to the stored energy (i.e. the tilting of the table) the design of the machine itself inherently isolates the energy.

That is, the table top is tilted up in a vertical orientation, hence acquiring stored energy, vis-à-vis one of the electric motors through a gear reduction box, a jack shaft, and a rack and pinion gear system. However, this mechanical system is self-locking in that at any orientation from horizontal to vertical, if the power is removed, the table will remain mechanically locked in place by the drive system.

Such a design is analogous to a garage door and its electric opener. That is, a single electric motor, through a series of mechanical components raises the garage door thereby imparting stored energy into it. But, the motion can be stopped at any point, power to the motor can be turned off or isolated, and the garage door will remained fixed in its location. This is because the mechanical components of the garage door system are self-locking. It is noted that the garage door system is actually more complicated than the subject tilt table in that most garage door systems also possess stored energy in the form of potential energy stored in the large spring used to assist in raising the door.

It should be pointed out, that compared to the subject tilt table, most garage doors are bigger, heavier, are raised higher, and have far more stored energy than the subject tilt table; plus they have larger electric motors than the subject tilt table, as well as the stored energy in their massive springs. Even so, it is not necessary to provide any "additional" components to the garage door system (i.e. the motor, the mechanical lifting system, the door, etc.), to LOTO the motor or to isolate the stored energy of either the elevated door or the spring. For example, if one wanted to "repair" the weather stripping on the bottom of a garage door, it would be perfectly safe and reasonable to raise the door part way (i.e. generating stored energy in both the door and the spring), unplug the motor (i.e. removing the source of energy), and then proceed to work under the door's bottom edge without mechanically "tying-off" the door. This is because the stored energy is inherently isolated by the design of the mechanical system that moves the door (i.e. the door will not "fall" down even though the power has been completely removed).

2

In fact, every time a person walks through an open garage door, they are walking under stored energy just like the subject tilt table possess when the table is in the raised or tilted position. It is not necessary to engage in an overt act to isolate the energy of the raised garage door, which is typically far more than the amount of energy when the table of the subject tilt table is raised, before walking through the doorway (i.e. under the fall zone of the door), because that energy is already inherently isolated by design. This is exactly the case for the subject tilt table. That is, when the table is raised or tipped, once the power is isolated, it is perfectly safe to "walk under" the raised table (i.e. such as to lubricate the gears) without engaging in any overt act of further energy isolation.

However, going back to the garage door example, no reasonable person would stand under the fall zone of a partially elevated garage door and then begin to dismount and/or disassemble the drive motor from the mechanical system that raises the door; in so doing, the effect is to remove the mechanical lock that isolates the stored energy. Yet, that in effect is essentially what Mr. Gendrow did to induce his accident. Garage door systems do not come with any "special" or "additional" mechanical devices to isolate their stored energy when such repairs are made, as it is assumed that the person making the repair will simply lower the door first, or tie off the door in some manner to prevent it from falling; both such options were available to Mr. Gendrow (i.e. the drive motor on the table was functional when he initiated his work; thus he could have and should have lowered the table before attempting to remove its motor).

As to the second point noted previously, it is important to note that the subject tilt table was designed in the 1966 to 1967 time frame and actually shipped in April of 1968. To put this into perspective, in 1968 seat belts were not standard equipment on cars and shoulder straps were only available on a very small subset of automobiles; alternatively, OSHA had not even been created yet. More to the point, it was not until 1989, over 20 years after the date of manufacture of the subject tilt table that OSHA enacted its first LOTO standard (i.e. CFR 1910.147). The point to be made is quite simple; designing equipment so as to facilitate LOTO was not state of the art in the late 1960s.

In summary, even if the subject machine were to be designed exactly as it was originally designed in the 1960s, today in 2005, it would still comply with all necessary LOTO provisions. That is, all energy sources can be simply and easily isolated vis-à-vis LOTO at the source of the incoming electrical power. The only source of stored energy is if the table is in the raised or tilted position. This energy is inherently isolated vis-à-vis the self locking design of the drive system that tilts the table; furthermore, such energy can be totally removed by simply lowering the table to the neutral or horizontal position. In short, there are no defects or deficiencies pertaining to LOTO associated with the design or manufacture of the subject tilt table; as such, the design of the subject tilt table was not a contributing factor to this accident.

Opinion 2: Both A & B Electric and Coyne Mattress should have complied with the minimum OSHA LOTO requirements as set forth in CFR 1910.147; the failure of both companies to do so were underlying root causes of this accident.

Basis for Opinion 2:  As noted above, LOTO was not state of the art when the subject tilt table was manufactured; notwithstanding there are no defects associated with LOTO with respect to the design of the subject tilt table.

However, the OSHA LOTO statute (i.e. CFR 1910.147) sets forth a variety of requirements for employers such as A & B Electric and Coyne Mattress Company pertaining to the communication, training, refresher training, and enforcement of mandatory LOTO procedures for their employees, as well as service personnel from other employers.  It is beyond the scope of this report to delve into a lengthy discussion of these mandatory OSHA requirements, nor would it be particularly fruitful to do so.

Suffice it to say that both A & B Electric and Coyne Mattress Company received multiple HOSH citations for LOTO violations as a result of their investigation associated with this accident.  Such citations provide further corroboration that the OSHA LOTO requirements are mandatory for both A & B Electric and Coyne Mattress Company and that both company's LOTO programs were deficient.  It is unequivocal that the various failures and/or defects in the A & B Electric's and Coyne Mattress Company's LOTO programs were two of the underlying root causes of this accident.

Opinion 3: The lack of and/or defects or deficiencies in any product manual and/or on-product warnings did not contribute to this accident.

Basis for Opinion 3:  As discussed previously, LOTO is not an issue associated with the design of the subject machine for two reasons; its design was state of the art with respect to LOTO both then and now, and the stored energy is inherently isolated.  As such, there was not then, nor is there now any reason to include LOTO information or LOTO warnings in any type of product manual or on-product label.

Nor is there any reason to include any type warning either in a manual or on the product pertaining to the task Mr. Gendrow was performing.  The tilt table is the predominant purpose and feature of the machine.  There can be no doubt that when it is in the raised position, essentially standing on its end, that it possesses stored energy (i.e. it can fall over).  However, this stored energy is inherently safe given the interlocking design of the drive system.  As such, there is no hazard, hence no need to warn.  Providing any such warning would be as ludicrous as providing a warning to not walk or drive under an elevated garage door; no such warnings are needed because it is not unsafe to do so.

Nor is there any reason to warn users not to remove the elevating motor when the table is in the raised position.  It is open and obvious that the motor and its associated drive train are what hold the table in its elevated state; if these restraining forces are removed it is open and obvious that the table top will fall.  This is particularly true given the likely sophisticated user that would be attempting any such maintenance task.  That is, the subject tilt table is clearly a specialized piece of equipment that is industry specific with a single use; it is a "mature" product in that the same basic simplistic design with the sole functional feature of rotating the table top has been in existence for roughly half a century.  As such, its likely user group will be trained professional knowledgeable of such basic concepts.  Lastly, Mr. Gendrow's is the only known accident of its type.

Opinion 4: The failure of Mr. Gendrow to follow well recognized and established safety procedures was a root cause of this accident.

Basis for Opinion 4: Despite their HOSH citations, both A & B Electric and Coyne Mattress Company have alleged they do have a LOTO program. To the extent that they did, and to the extent the Mr. Gendrow was trained in such procedures yet failed to comply, his act(s) of omission would be another root cause(s) of this accident.

Notwithstanding, as noted above, the stored energy hazard associated with the table in the elevated position is an open and obvious hazard, particularly to a trained and sophisticated user such as Mr. Gendrow. It is note worthy that Mr. Barcarse, President of A & B Electric, testified that Mr. Gendrow was one of his most experienced and most trusted employees. In addition, Mr. Lee testified that Mr. Gendrow had personally operated the table (i.e. raised and lowered it) on several occasions in the past. In other words, given the simplicity of the machine, along with Mr. Gendrow's overall level of experience and mechanical/electrical sophistication, as well as Mr. Gendrow's first hand experience with the subject tilt table it can only be concluded that Mr. Gendrow's decision to remove the bolts holding the restraining motor in place while the table was elevated was nothing less than a careless act and a violation of basic safety protocol.

In fact, it appears that Mr. Gendrow's decision to remove the motor that provided the inherent stability of the tilted table, was made impromptu; that is, his initial work plan was to simply change out the step motor, as the table motor was functioning properly. The point to be made is that because Mr. Gendrow made such an impromptu decision/change of work plans, he failed to properly consider the potential consequences and/or hazards associated with such actions.

Please let me know if you have any questions or if I can be of any further assistance. I look forward to continuing to work with you on this matter.

Sincerely,

Richard T. Gill, Ph.D., CHFP, CXLT
President and Chief Scientist

### Richard Thomas Gill
2104 West Riverside
Spokane, WA 99201
Phone/Fax: (509) 624-3714
Email: RickGill.ACS@Verizon.Net

**LICENSE:**

Board of Certification in Professional Ergonomics
>   Certified Human Factors Professional, 1994-present
>   License Number  0526, 1994

International Safety Academy
>   Certified XL Tribometrist
>   License Number  A2002-0272

**EDUCATION:**

University of Illinois
>   Ph.D. in Mechanical Engineering, 1982
>   Area of Specialization: Human Factors

Wright State University, 1978
>   M.S. in Systems Engineering
>   Area of Specialization: Human Factors

Massachusetts Institute of Technology
>   1 year Graduate Study in Electrical Engineering, 1973

Wright State University
>   B.S. in Systems Engineering, 1972

**ACADEMIC EXPERIENCE:**

*Professor of Mechanical Engineering at the University of Idaho (1995-2002):* Teaching responsibilities include human factors, math modeling, mechanics, and statistics. Additional responsibilities include appointment as an adjunct professor in the Department of Psychology and Director of Idaho Space Grant Consortium.

*Associate Professor of Mechanical Engineering at the University of Idaho (1990-1995):* Teaching responsibilities include human factors, math modeling, mechanics, and statistics. Additional responsibilities include appointment as an adjunct professor in the Department of Psychology and Director of Idaho Space Grant Consortium.

## ACADEMIC EXPERIENCE: (Continued)

*Assistant Dean for the College of Engineering at the University of Idaho (1989-1990):* Administrative responsibilities included the overall administration of the Engineering Science curriculum, coordinating statewide off-campus programs, managing engineering cooperative education programs, and recruiting new students. Position also included teaching and research responsibilities.

*Assistant Professor of Mechanical Engineering at the University of Idaho (1987-1988):* This tenure track appointment was 65% Mechanical Engineering and 35% Engineering Sciences. Teaching responsibilities included math modeling, mechanics, statistics, and course development in human factors. Additional responsibilities included a position as an adjunct professor in the Department of Psychology to assist in the development of an interdisciplinary research laboratory and graduate program in human factors.

*Assistant Professor of Engineering Science at the University of Idaho (1984-1987):* This tenure track appointment was 50% in the Engineering Science Department and 50% in the Mathematics and Applied Statistics Department. Teaching responsibilities included courses in engineering mechanics, applied probability and statistics, and developing a course in human factors in engineering design. Additional responsibilities included helping staff the Statistical Consulting Center.

*Assistant Professor of Engineering at Wright State University (1980-1984):* Served as Program Director for the Human Factors Engineering Program. Teaching responsibilities included engineering statics, engineering dynamics, human factors engineering, senior seminar, and systems approach to human factors. Also held a joint appointment with the WSU School of Professional Psychology where the primary responsibility was to assist in the development of a Doctor of Psychology degree in Human Factors.

*Tutor for the State of Ohio (1978):* Worked as a personal tutor for individual college students being rehabilitated from mental illnesses.

*Student Tutor (1969-1972):* Worked as a tutor for Wright University, Dean of Students Office. Tutored courses in Mathematics and Physics.

## PROFESSIONAL EXPERIENCE:

*Engineering Consultant for Applied Cognitive Sciences (1983-Present):* I have worked as an expert witness, for both the plaintiff and defense, on over 1000 legal cases nationwide. I have been qualified as an expert in human factors, accident reconstruction, mechanical engineering, safety engineering, and risk management. Work has also included contracts from U.S. government agencies (USAF Aeromedical Research Laboratory and Idaho National Engineering Laboratory) as well as private industry (Arvin Industries, The Vendo Corporation, Key Tronic Corporation, Port Townsend Paper, and Hewlett Packard).

**PROFESSIONAL EXPERIENCE: (Continued)**

*Research Scientist for the USAF Office of Scientific Research (1983):* This was an appointment at the USAF Aeromedical Research Laboratory. The work focused on assessing the relationship between acceleration stress and pilot workload. In addition, I also worked on a project concerning the effects of high-onset rates of acceleration on pilot performance.

*Graduate Research Assistant at the University of Illinois (1978-1981):* Responsibilities included the conception and formulation of various research projects in the fields of Engineering Psychology and Mechanical Engineering.

*Human Factors Engineer for the United States Air Force Human Resources Laboratory (1976-1978):* Worked concurrently in two major fields: (1) visual simulation and (2) motion and force simulation. This included conducting in-house research as well as serving as program manager for externally conducted research

*Electronics Engineer for the United States Air Force Foreign Technology Division (1974-1976):* Position required a Top Secret security clearance. The work involved the selection and analysis of intelligence data to predict foreign military trends and capabilities.

*Process Control Engineer for Industrial Nucleonics Corporation (1973-1974):* Worked on the development of an infra-red moisture gauge to allow real-time computer control for tobacco dryers. Responsibilities included the development of a calibration technique and system installation at an operational site.

*Computer Operator for Synergy, Inc. (1970-1972):* Operated a CDC 6600 Computer at Wright Patterson Air Force Base while attending undergraduate school.

**HONORS AND AWARDS:**

University of Idaho College of Engineering Outstanding Academic Advisor, 1998.

University of Idaho College of Engineering Outstanding Senior Faculty, 1996.

University of Idaho Alumni Award for Excellence, 1994.

American Society for Engineering Education Centennial Certificate Awardee, 1993.

Best Paper Award from American Society for Engineering Education Regional Conference, 1991.

ASUI Outstanding Faculty Award, 1991.

University of Idaho Alumni Award for Excellence, 1988.

## HONORS AND AWARDS: (Continued)

Recipient of the New Engineering Educator Excellence Award from American Society for Engineering Education, 1987.

Recipient of the Dow Outstanding Young Faculty Award from the American Society for Engineering Education, 1986.

Selected as an S.C.E.E.E. fellow for the Air Force Office of Scientific Research Summer Faculty Research Program, 1983.

Graduated first in class at the University of Illinois (GPA 5.0 out of 5.0), 1981.

Member of Tau Beta Pi National Engineering Honor Society, 1979.

Recipient of the "Science and Engineering Career Motivation Award" which is given annually by the Dayton Board of Education, 1978.

Graduated first in class at Wright State University (GPA 4.0 out of 4.0), 1978.

Awarded National Science Foundation Traineeship to Massachusetts Institute of Technology, 1972.

Graduated first in class at Wright State University, summa cum laude (GPA 3.9 out of 4.0), 1972.

W.S.U. Foundation Scholarship, 1972.

W.S.U. Foundation Scholarship, 1971.

Golding Award (Outstanding Junior Engineer) at Wright State University, 1971.


## PUBLICATIONS:

Gill, R., and Gordon, S. Cognitive Task Analysis. In C. Zsambok and G. Kline (Eds.), Naturalistic Decision Making, pp. 131-140, Lawrence Erlbaum Associates, 1997.

Gill, R. Towards Protection from Cumulative Trauma Disorder Litigation. Advances in Industrial Ergonomics and Safety VII, Taylor and Francis, Ltd., 1996.

Gill, R., Gordon, S., McGehee, D., and Dean, S. Integrating Cursor Control into the computer Keyboard. In Human Factors Perspectives on Human-Computer Interaction: Selections from Human Factors and Ergonomics Society Annual Meeting Proceedings, 1983-1994, Human Factors Society, 1995.

Gill, R., Gordon, S., and Babbitt, B. Embedding Intelligent Tutoring into Real Time Simulation. Proceedings of the Eighth Symposium on Aviation Psychology, 1995.

**PUBLICATIONS: (Continued)**

Babbitt, B., Bell, H., Crane, P., Sorensen, H., Gordon, S., and Gill, R. Intelligent Tutoring System: F-16 Flight Simulation. <u>Proceedings of the 1994 American Institute of Aeronautics and Astronautics (AIAA) Computing in Aerospace Conference</u> 1994.

Gill, R.  A Comprehensive Evaluation of Warning Label Design.  In K. Laughery, M. Wogalter, and S. Young (Eds.), <u>Human Factors Perspectives on Warnings</u> pp. 50-52, Human Factors and Ergonomics Society, 1994.

Gill, R., and Gordon, S. Conceptual Graph Analysis: A Tool for Curriculum Development, Instructional Design, and Trainee Evaluation. <u>Proceedings of the 1993 Interservice/Industry Training Systems and Education Conference</u> pp. 861-870.

Gordon, S. E., Schmierer, K. A., and Gill, R. T. Conceptual Graph Analysis: Knowledge Acquisition for Instructional System Design. <u>Human Factors</u>, 35, pp. 459-482, 1993.

Gordon, S. E., and Gill, R.T. Knowledge Acquisition with Question Probes and Conceptual Graph Structures. In T. Lauer, E. Peacock, and A. Graesser (Eds.), <u>Questions and Information Systems</u> pp. 29-46. Hillsdale, N J: Lawrence Erlbaum Associates, 1992.

Gill, R, Gordon, S., McGehee, D., and Dean, S. Integrating Cursor Control into the Computer Keyboard. <u>Proceedings of the Human Factors Society's 35th Annual Meeting</u>, Vol. 1, pp. 256-260, 1991.

Gill, R., Dingus, T. Human Factors and Engineering Design High School Summer Workshop. <u>Proceedings of the Human Factors Society's 34 Annual Meeting</u> Vol. 1, pp. 522-524, 1990.

Dingus, T., Gordon, S., and Gill, R. A New Program for the Remote Training of Human Factors Professionals. <u>Proceedings of the Human Factors Society's 34 Annual Meeting</u> Vol. 1, pp. 534-536, 1990.

Gill, R., and Stauffer, L. Developing Appropriate Evaluation Criteria for Assessing the Value Added by Mechanical Engineering Education Programs. <u>Proceedings of the 1989 American Society for Engineering Education Annual Conference</u> Vol. 3, pp. 1263-1265, 1989.

Gordon, S., and Gill, R. Question Probes: A Structured Method for Eliciting Declarative Knowledge. <u>AI Applications in Natural Resource Management</u> Vol. 3, pp. 13-20, 1989.

Gill, R. Mail-order Errors: The Role of Human Factors. <u>Dickinson's PSAO,</u> Vol. 3, No. 12, pp. 6-7, Dec. 1988.

Christensen, J., Topmiller, D. and Gill, R. Human Factors Definitions Revisited. <u>Human Factors Bulletin</u>, pp. 7-8, Oct. 1988.

## PUBLICATIONS: (Continued)

Dingus, T., Hyde, R., Hyde, T., Frame, M. and Gill, R. The Speed and Accuracy of a Spatial Communication Task as a Function of Operator Location. Proceedings of the 21 st Annual Meeting of the Human Factors Association of Canada

Gill, R., Gordon, S., Moore, J. and Barbera, C. The Role of Knowledge Structures in Problem Solving. Proceedings of the 1988 American Society for Engineering Education Annual Conference, Vol. 2, pp. 583-90, 1988.

Junker, A., Levison, B. and Gill, R. A Systems Engineering Based Methodology for Analyzing Human Electrocortical Responses. AFAMRL Technical Report AAMRL-TR-87-030, May 1987.

Gill, R., Barbera, C. and Precht, T. A Comparative Evaluation of Warning Label Designs. Proceedings of the Human Factors Society's 31 st Annual Meeting, Vol. 1, pp. 476-78, 1987.

Gordon, S., Gill, R., and Dingus, T. Designing for the User: The Role of Human Factors in Expert System Development. Artificial Intelligence Applications in Natural Resource Management, Vol. 1, No. 1, pp. 35-46, 1987.

Gill, R. The Need for Human Factors in the Design of Expert Systems. Proceedings of the 1987 Frontiers in Education Conference, 1987.

Gill, R., and Dingus, T. A Structural Approach to Teaching Relative Motion. Proceedings of the 1987 American Society for Engineering Education Annual Conference, Vol. 4, pp. 1806-08, 1987.

Barbera, C. and Gill, R. Human Factors in Warning Label Design. Proceedings of Interface 1987.

Gill, R., Kenner, K. and Junker, A. Steady State EEG as A Measure of Peripheral Light Loss. Proceedings of the Human Factors Society's 30th Annual Meeting, Vol. 2, pp. 1249-52, 1986.

Kenner, K, Junker, A. and Gill, R. Visual Evoked Response in the Periphery, The Beginnings of an Objective Measure of G-Induced PLL. Proceedings of the National Aerospace and Electronics Conference, Vol. 3, pp. 909-12, May 1986.

Gill, R., and Albery, W. The Effects of Acceleration Stress on Human Workload and Manual Control. Proceedings of the 21st Annual NASA Conference on Manual Control, 1985.

Albery, W., Ward, S. and Gill, R. Effects of Acceleration Stress on Human Workload. AFAMRL Technical Report AAMRL-TR-85-039, 1985.

**PUBLICATIONS: (Continued)**

Gill, R., and Gordon, S. The Effectiveness of Group Projects in Teaching Engineering Mechanics. <u>Proceedings of the 1984 American Society for Engineering Education</u>, 5(5), pp. 27-33, 1984.

Gill, R., Obleski, M. Gordon, S. and Albery, W. The Effects of Acceleration on Cognitive Processing. <u>Proceedings of Mid-Central Ergonomics/Human Factors Conference</u>, April 1984.

Gill, R. Pilot Workload and G-Stress: A Potential Interaction? USAF Summer Faculty Research Program – Final Reports. Published by Southeastern Center for Electrical Engineering Education, December 1983.

Pierce, B., Obleski, M. and Gill, R. Human Factors in Aerospace: A Student Chapter Project. <u>Human Factors Bulletin</u>, April 1983.

Gill, R., and Wickens, C. Operator Workload as a Function of the System State. <u>Proceedings of the 18th Annual NASA Conference on Manual Control</u>, 1982.

Gill, R., Wickens, C., Reid, R. and Donchin, E. Pseudo-Quickening: A New Display Technique for Manual Control of Higher Order Systems. <u>Proceedings of the Human Factors Society's 26th Annual Meeting</u>, 1982.

Gill, R., Wickens, C., Donchin, E. and Reid, R. The Internal Model as a Means of Analyzing Human Performance. <u>Proceedings of the 1982 I.EE.E. International Conference on Systems, Man and Cybernetics, 1982.</u>

Hull, J., Gill, R. and Roscoe, S. Locus of Stimulus to Visual Accommodation: Where in the World, or Where in the Eye? <u>Human Factors</u>, 24, pp. 311-19, 1982.

Wickens, D., Gill, R., Kramer, A., Ross, W. and Donchin, E. The Cognitive Demand of Second Order Manual Control: Applications of the Event-Related Brain Potential. <u>Proceedings of the 17th Annual NASA Conference on Manual Control</u>, NASA TM, 1981.

Ritchie, M., Gill, R. and Jankowski, R. The Education and Placement of Human Factors Engineers. <u>Proceedings of the North Central Section, American Society for Engineering Education</u>, Dayton, OH, pp. 82-87, April 1981.

Albery, W., and Gill, R. Development and Validation of Drive Concepts for an Advanced G-Cueing System. <u>Proceedings of the 1978 American Institute of Aeronautics and Astronautics</u>, 1978.

**PRESENTATIONS:**

Gill, R. Electronic Billboards: Safety and Social Issues. Invited presentation to the Snohomish City Council Meeting, May 2005.

Gill, R. Human Factors in Accident Reconstruction. Invited address to the 20th Annual Special Problems in Traffic Crash Reconstruction at IPTM, Jacksonville, Florida, April, 2002.

Gill, R. Human Factors Expert Witness. American Board of Trial Advocates Meeting, Waikiki, Hawaii, November 2000.

Gill, R. Industrial Funding Support for K-12 Programs. Panel discussant for the Annual Meeting of Space Grant Directors, April 1997.

Gill, R. Human Factors in Forensic Investigations. Invited address at Society of Forensic Engineers and Scientists Meeting, August 1996.

Barnes, T., Hodge, J., and Gill, R. Design and Fabrication of an Integrated Cystic Fibrosis Treatment System. Presented at the 1996 Idaho Academy of Science Meeting.

Gill, R. Technology and Its Impact on Society. Invited address at the Fourteenth Annual International Exchange Conference, LewisClark State College, October 1994.

Gill, R., and Lewis, V. Towards Improved College Teaching: A Preliminary Report. Presented at the American Society for Engineering Education Pacific Northwest Setion Annual Regional Meeting, April 1992.

Elger, D., and Gill, Modeling the Problem Solving Process Used by an Expert. Presented at the American Society for Engineering Education Pacific Northwest Section Annual Regional Meeting, April 1992.

Gill, R. High School Summer Workshops: An Effective Recruitment Technique. Presented at the American Society for Engineering Education Pacific Northwest Section Annual Regional Meeting, April 1991.

Elger, D., and Gill, R. A Goal for Engineering Education: The Ideal Engineer. Presented at the American Society for Engineering Education Pacific Northwest Section Annual Regional Meeting, April 1991.

Carson, B., and Gill, R. The Human Factors Element in Engineering Design. Presented at the 1989 Idaho Academy of Science.

Simon, A., Imthurn, J., Polillo, S. and Gill, R. The Role of Human Factors in Engineering Design: A Case Study of an Industrial Paper Winder. Presented at the 1987 Idaho Academy of Science.

## PRESENTATIONS: (Continued)

Gill, R. The Role of Human Factors in Operator Workstation Design. Invited Presentation at the 1986 PCAPPA.

Gill, R., and Mau, C. The Feasibility of Using EEG to Measure Peripheral Light Loss. Presented at the Annual Western Psychological Association Meeting, 1986.

Gill, R., Ward, S. and Albery, W. The Comparison of Subjective and Objective Workload Measures for Humans Under Acceleration Stress. Presented at the 1984 National Aerospace and Electronics Conference, May 1984.

Gordon, S., & Gill, R. A New Technique for Assessing Cognitive Processing Capabilities. Presented at the Annual Meeting of the Ohio Academy of Science, April 1984.

Richard, M., Rice, S. and Gill, R. The Improvement of a Ballistics Test Range Control Panel Via Human Factors Engineering. Presented at the Annual Meeting of the Ohio Academy of Science, April 1984.

Peters, R., Gill, D., Pasquini, L. and Gill, R. Human Factors Critique and Redesign of a Jet Engine Control Panel. Presented at the Annual Meeting of the Ohio Academy of Science, April 1984.

Gill, R. Improved Quickened Displays. Presented at the Annual Meeting of the Ohio Academy of Science, April 1983.

Julien, J., Click, A., Sanders, S., Scandura, L. and Gill, R. Human Factors Critique and Design of a Hydraulic Systems Test Stand. Presented at the Annual Meeting of the Ohio Academy of Science, April 1983.

Ingle, D., Dabney, G., Scherty, K. Beckett, T. and Gill, R. A Human Factors Critique of an Industrial Sewer Cleaner. Presented at the Annual Meeting of the Ohio Academy of Science, April 1983.

Gill, R. The Role of Human Factors at Three Mile Island. Invited presentation by the Southern Ohio Chapter of the Human Factors Society, October 1982.

Gill, R. Human Factors in Education. Invited presentation by the Dayton Chapter of the I.E.E.E., October 1980.

Gill, R., Ross, T. and Albery, W. An Advanced Acceleration Simulation Device for the Flight Simulators. Presented at the Dayton-Cincinnati AIAA Mini-Symposium, 1978.

## PROFESSIONAL ACTIVITIES:

Member of Human Factors and Ergonomics Society
Member of American Society for Testing and Materials
Member of American Academy of Forensic Sciences
Member of Illuminating Engineering Society of North America

## GRANTS AND CONTRACTS:

Safety Analysis of Electronic Billboards, City of Snohomish, 2005

Evaluation of Warning Label Designs, American Fun Kart Association, 2002.

Idaho Space Grant Consortium, NASA, $260,000, Assistant Director, 2001.

Idaho Space Grant Consortium, NASA, $260,000, Assistant Director, 2000.

Transforming Engineering Consulting into Engineering Case Studies, University of Idaho, $35,000, Sabbatical, 19992000.

Idaho Space Grant Consortium, NASA, $256,500, Director, 1999.

NASA Experimental Program to Stimulate Competitive Research, $225,000, Statewide Director, 1999.

Idaho Space Grant Consortium, NASA, $256,000, Director, 1998.

Idaho Space Grant Consortium, NASA, $255,000, Director, 1998.

Idaho Total Engineering Challenge, Lockheed Martin Aerospace Corporation, $5,000, Principal investigator, 1997.

Idaho Space Grant Consortium, NASA, $255,000, Director, 1997.

Idaho Space Grant Consortium, NASA, $230,000, Director, 1996.

Summer Institute for Engineering Educators on Curriculum Design and Implementation for Interactive Teaching/Learning, University of Idaho Office of Teaching Enhancement, $2,500, Co-principal investigator, 1995.

Idaho Space Grant Consortium, NASA, $230,000, Director, 1995.

Evaluation of an F-16 Intelligent Tutoring System, Northrop Corporation, $37,600, Co principal investigator, 1994.

JETS Workshop, US Department of Energy, $1,400, Co-principal investigator, 1993.

Workstation and Hand Tool Design for Disk Drive Assembly, Hewlett Packard, $5,000, Co-principal investigator, 1993.

Analysis of a Disk Drive Arm Assembly Line Process, Hewlett Packard, $2,000, Co principal investigator, 1992.

Multimedia for Enhanced Undergraduate Education, University of Idaho Office of Academic Affairs and IBM, $81,000, Co-principal investigator, 1991.

## GRANTS AND CONTRACTS: (Continued)

JETS Summer Workshop, US Department of Energy, $9,000, Coinvestigator, 1991.

Analysis of a Paper Winder Safety Gate, Port Townsend Paper, $2,500, Ceprincipal investigator, 1991.

Keymouse Configuration and Design, Key Tronic Corporation, $6,700, Co-principal investigator, 1990.

Keymouse Usability, Key Tronic Corporation, $18,900, Co-principal investigator, 1990.

JETS Summer Workshop, US Department of Energy, $9,000, Principal investigator, 1990.

Mapping Knowledge in Declarative and Procedural Structures, Idaho State Board of Education, $35,000, Co-principal investigator, 1990.

JETS Summer Workshop, US Department of Energy, $22,000, Principal investigator, 1990.

A Program to Test and Evaluate Equipment for the Disabled, University of Idaho Research Office, $7,000, Co-principal investigator, 1989.

Research Experience for Undergraduates, National Science Foundation, $4,000, Ce principal investigator, 1989.

Stressor Interaction Assessment, Boeing Military Aircraft Corporation, $21,600, Ce principal investigator, 1989.

Design and Evaluation of a Vending Machine Retrofit System, The Vendo Company, $20,400, Principal investigator, 1988.

A Structural Technique for Evaluating Design Tools, National Science Foundation, $60,000, Co-author and consultant, 1988.

Formations and Use of Conceptual Structures in Problem SolvingDomains, Air Force Office of Scientific Research, $79,200, Ceprincipal investigator, 1988.

Software Interface Design for Asynchronous Computer Conferencing, EG&G of Idaho, $12,800, Co-principal investigator, 1987.

Techniques for Augmenting the Communication of Spatial Information, Boeing Military Aircraft Company, $15,000, Co-principal investigator, 1987.

Evaluation of Warning Label Effectiveness, Arvin Industries, $1,400, principal investigator, 1986.

**GRANTS AND CONTRACTS: (Continued)**

A Structured Approach for Developing an Effective Teaching Methodology for Problem Solving: A Case Study, American Society for Engineering Education, $1,500, principal investigator, 1986.

The Development of an Innovative Technique for Using Personal Computers to Aid in Teaching Deaf People to Speak, University of Idaho Seed Grant, $3,300, principal investigator, 1986.

The Development of a Steady State EEG Measure of Acceleration Induced Peripheral Light Loss, United States Air Force Aerospace Medical Research Laboratory, Human Engineering Division, $7,100, principal investigator, 1985.

The Feasibility of Using Electroencephalograms to Measure Acceleration Stress, United States Air Force Aerospace Medical Research Laboratory, Human Engineering Division, $14,000, principal investigator, 1984.

The Effects of Acceleration Stress on Cognitive Workload, United States Air Force Aerospace Medical Research Laboratory, Biomechanics Division, $35,000, principal investigator, 1984.

**Applied Cognitive Sciences**

Human Factors
Engineering

A CONSULTING GROUP

## Sworn Testimony for Richard Gill, Ph.D., CHFP, CXLT
### As of December 10, 2005

**2005:**

Trials:
1. Juarez vs. Frias; San Francisco, California via Preservation Deposition (State)
2. State of Idaho vs. Marek; Sandpoint, Idaho (State)
3. Dubac-Tyler vs. Hyatt Corp; Kaanapali, Maui (State)
4. Rukavina, et al. vs. Crane Plumbing, et al; Challis, Idaho (State)
5. Rabissa vs. Costco; Kona, Hawaii (State)
6. Haggard vs. Parma Furniture; Nampa, Idaho (State)


Depositions:
1. Kim vs. Savard, et al.; St. Johnsbury, Vermont (Volume 1)
2. Cormier vs. Gold's Gym, et al., Boise, Idaho
3. Cross vs. Takenaka Landscaping, et al.; Makakilo, Oahu
4. Li and Wang vs. Sea Life Park; Honolulu, Hawaii
5. Rabissa vs. Costco; Kona, Hawaii (Volume II)
6. Erickson vs. Badger Building Center; Bonners Ferry, Idaho
7. Kim vs. Savard, et al.; St. Johnsbury, Vermont (Volume II)
8. Harris vs. Union Pacific Railroad; Seattle, Washington
9. Juarez vs. Frias; San Francisco, California
10. Horsley vs. Hilton Hotel Corp; Seattle, Washington
11. Dubac-Tyler vs. Hyatt Corp; Kaanapali, Maui
12. Bacani vs. State of Hawaii, et al.; Honolulu, Hawaii
13. Kanei vs. Daiei; Honolulu, Hawaii
14. Stevens vs. Robert Bosch Tool Corporation; Twin Falls, Idaho
15. Young vs. Holiday Inn; Hagåtña, Guam
16. Anthony vs. Alexander & Baldwin, Inc., et al; Kahalui, Maui (Records)
17. Anthony vs. Alexander & Baldwin, Inc., et al; Kahalui, Maui
18. Baker vs. Flying J; Casper, Wyoming
19. Abiley vs. State of Hawaii; (Arbitration); Honolulu, Hawaii
20. Sales vs. Self-Help Housing; Honolulu, Hawaii
21. Rukavina, et al. vs. Crane Plumbing, et al; Challis, Idaho
22. Hart vs. Hoist, et al.; Bonners Ferry, Idaho
23. LeMaster vs. BNSF; Billings, Montana
24. Dunivent vs. UPRR; Cheyenne, Wyoming
25. Glaberson vs. A & B Properties; Kahalui, Hawaii (Records Depo)
26. Newman vs. Milacron, et al; Bozeman, Montana (Volumes 1 and 2)

27. Glaberson vs. A & B Properties; Kahalui, Hawaii
28. McKay vs. Smith; Spokane, Washington; (Arbitration)
29. Schultz vs. Ellensburg Cement Products, et al.; Seattle, Washington
30. Scholz vs. Zip Truck Lines, et al.; Spokane, Washington
31. Nyquist vs. Farmers et al.; Great Falls, Montana (Arbitration)
32. Hernadez vs. Lematic; Honolulu, Hawaii
33. Abiley vs. State of Hawaii; Honolulu, Hawaii
34. Dison vs. Vaagen Brothers Lumber; Colville, Washington
35. Harvey vs. Payne Properties; Spokane, Washington
36. Mallot vs. Marriott; Ko'Olina, Oahu (Records Deposition)
37. Stewart vs. Violich et al.; Kailua, Hawaii

**2004:**
Trials:
1. Twenge vs. Fred Meyers, et al.; Portland, Oregon (State)
2. Tyler vs. Petsmart et al.; Spokane, Washington (State)
3. Lewis vs. Tribune Publishing Company, et al.; Colfax Washington (State)
4. Fowler vs. Fred Meyers; Portland, Oregon (State)
5. Richardson vs. State of Montana; Butte, Montana (State)
6. Wendt vs. USA; Honolulu, Hawaii (Federal)
7. Parris vs. State of Washington, et al.; Spokane, Washington (State)
8. Miller vs. Ostler; Moses Lake, Washington (State)
9. Kelley vs. County of Maui, et al.; Wailuku, Maui (State)

Depositions:
1. Robinson vs. State of Montana; Butte, Montana
2. Lewis vs. Colfax Masonic Corp.; Colfax, Washington
3. Rabisa vs. Costco; Kona, Hawaii
4. Kitchens vs. Outrigger, et al.; Waikiki, Hawaii
5. Ishii vs. Island Colony Condominiums; Waikiki, Hawaii
6. Cadman vs. City and County of Honolulu; Honolulu, Hawaii
7. Castillo vs. A & A Electric; Honolulu, Hawaii
8. Lyons vs. Smith's Food and Drug; Casper, Wyoming
9. Johnson vs. Manco et al.; Modesto, California
10. Benoy vs. Jacobson; Coeur d'Alene, Idaho
11. Rabisa vs. Costco; Kona, Hawaii (Arbitration)
12. Lawlor vs. Naeole et al.; Honolulu, Hawaii
13. Carter vs. City of Spokane; Spokane, Washington
14. Kahikina vs. Hilo Terrace Apartments AOAO et al.; Hilo, Hawaii
15. Moniz vs. Barland et al.; Honolulu, Hawaii
16. Zelinski vs. BNSF; Portland, Oregon
17. Hopkin vs. BNSF; Greybull, Wyoming
18. Schroder vs. Arby's; Spokane, Washington
19. Vuittonet vs. Hayes Lemmerz International, et al.; Boise, Idaho
20. Gapero vs. Pacific Shores AOAO, et al; Kihe, Maui
21. Ibara vs. Aloha Tower Management Company, et al.; Honolulu, Hawaii
22. Baker vs. Totally Titanium Inc.; Waikiki, Hawaii
23. Jenner vs. Bargain Giant; Spokane, Washington
24. Milward vs. Vandervert; Spokane, Washington

25. Baker vs. Totally Titanium Inc.; Waikiki, Hawaii (Arbitration)
26. Frahm vs. Alamo Rental Car; Las Vegas, Nevada
27. Mathews vs. Harrington; Spokane, Washington
28. Cuthbert vs. JB's Family Restaurant; Coeur d'Alene, Idaho
29. Kelley vs. County of Maui et al.; Wailuku, Maui
30. Kappel vs. Kea Lani et al.; Wailea, Maui
31. Cross vs. Takanaka Landscaping, et al.; Makakilo, Hawaii (Arbitration)
32. Sharp vs. Best; Cheney, Washington
33. Meador vs. Chipman & Taylor, et al.; Pullman, Washington
34. Miyamoto vs. Hawaiian Electric Company, et al; Honolulu, Hawaii (Volumes 1 & 2)
35. Hayes vs. Union Pacific Railroad, et al.; Rupert, Idaho
36. Reaves vs. Rowe; Kennewick, Washington

**2003:**

Trials:

1. George vs. Diamond Parking, Inc., et al.; Honolulu Hawaii (State)
2. Slack vs. Kelleher; Caldwell, Idaho (State)
3. Sinclair vs. BNSF; Great Falls, Montana (State)
4. Barnedo vs. Dominguez; Honolulu, Hawaii (State)
5. Lewis vs. State of Hawaii; Honolulu, Hawaii (State)
6. Gouveia vs. 24 Hour Fitness; Honolulu, Hawaii (State)
7. Fenwick vs. Watabe et al.; Hagåtña, Guam
8. Gipson vs. Yoke's Pac & Save; Spokane, Washington (State)
9. England vs. Swinerton; San Francisco, California (State)

Depositions:

1. Vuillemot vs. Wailuna Recreation Association; Honolulu, Hawaii (Arbitration)
2. King vs. Cottrell; Spokane, Washington
3. Lewis vs. State of Hawaii; Honolulu, Hawaii
4. Easterday vs. Leeward Auto Recycling; Honolulu, Hawaii
5. Weathers vs. 24 Hour Fitness; Boise, Idaho
6. Prior vs. Columbus McKinnon Corporation; Lewiston, Idaho
7. Pettit et al. vs. Friendly Ford et al.; Las Vegas, Nevada
8. Sinclair vs. BNSF; Billings, Montana
9. Burkey vs. Premier Chemicals et al; Pocatello, Idaho
10. Figaroa vs. State of Hawaii; Lihue, Hawaii
11. Sherwood et al vs. Williams & Asscociates et al; Honolulu, Hawaii (Volumes 1-2)
12. Borges vs. County of Hawaii; Hilo, Hawaii (Arbitration)
13. Johnson vs. K.C. Charles, et al.; Spokane, Washington (Volume 1-2)
14. Bishop vs. Union Pacific Railroad; Cheyenne, Wyoming (Volume 1-2)
15. Van Dinter vs. Nason; Spokane, Washington
16. Olson vs. Johnson; Post Falls, Idaho
17. Schmit vs. Vandouris; Spokane, Washington
18. Martin vs. State of Hawaii et al; Waimanalo, Hawaii
19. Himmelmann vs. Taroc; Honolulu, Hawaii
20. Olson vs. BNSF; Cheyenne, Wyoming
21. Gomez et al vs. IBM et al; San Jose, California (Volumes 1-6)

3

22. Kubinski vs. UPRR; Salt Lake City, Utah (Volume 1-2)
23. Broadfoot vs. Watco; Colfax, Washington
24. Berry vs. Hotel of Marianas; Hagåtña, Guam  96910
25. Ganley vs. Harbor Square; Honolulu, Hawaii (Deposition)
26. Ganley vs. Harbor Square; Honolulu, Hawaii (Arbitration)
27. Ferger vs. Spokane Valley Four Square Church; Spokane, Washington
28. Tyler vs. Petsmart et al.; Spokane, Washington
29. Paulson vs. Ru-mar Club; Twin Falls, Idaho
30. O'Donnell vs. Taylor Construction; Bozeman, Montana
31. England vs. Swinerton et al.; San Francisco, California
32. Fenwick vs. Watabe et al.; Hagåtña, Guam
33. Pinkley vs. BNSF; Spokane, Washington
34. Harrison vs. Hilton Hawaii Village; Waikiki, Hawaii
35. Clark vs. BNSF; Gillette, Wyoming
36. Zygutis vs. Beech; Waipio Valley, Hawaii
37. Retford vs. Snow King et al.; Jackson Hole, Wyoming
38. Westlake vs. Ryobi et al; Pocatello, Idaho
39. Mecurio vs. Brownlee et al; Missoula, Montana
40. Nordstrom vs. Bodkin Enterprises; Hayden Lake, Idaho
41. Houser vs. Resort Quest et al.; Lahaina, Maui
42. Benson vs. Magic Valley Partners et al; Twin Falls, Idaho

**2002:**
Trials:
1. Wright vs. Chanel; Honolulu, Hawaii (State)
2. Dexheimer vs. Guthrie; Spokane, Washington (State)
3. Becker vs. Oliver Family Limited Partnership; Coeur d'Alene, Idaho (State)
4. Weissinger vs. Lewis & Clark College; Portland, Oregon (State)

Depositions:
1. Hotel Corporation of the Pacific vs. Group 70; Kauai, Hawaii
2. Eades vs. Lisandra, Inc.; Kihei, Hawaii (Volume 2)
3. Requelman vs. Pacific Transportation Services; Hilo, Hawaii
4. Eades vs. Lisandra, Inc.; Kihei, Hawaii (Arbitration)
5. Parlin vs. Miller; Spokane, Washington
6. Gaspero vs. Pacific Shores; Kihei, Hawaii (Records Deposition)
7. Bowkett vs. Texton; Boise, Idaho
8. Guerrero vs. Cabjaun et al; Honolulu, Hawaii
9. Fenzke vs. Naniloa Hotel; Hilo, Hawaii (Arbitration)
10. Harshmans vs. Jackson Hole Mountain Resort et al.; Jackson, Wyoming
11. Gibson vs. BNSF; Albuquerque, New Mexico
12. Colburn vs. Amtrack; Salt Lake City, Utah
13. Wells vs. Wolf Lodge; Coeur d'Alene, Idaho
14. Ley vs. Stockman Financial Corporation; Billings, Montana
15. Becker vs. Oliver Family Limited Partnership; Coeur d'Alene, Idaho
16. Britton vs. Shearer; Spokane, Washington
17. Keller, et al. vs. Jones, et al.; New Orleans, Louisiana
18. Kinery vs. Mathieu; Jackson Hole, Wyoming
19. Zalopany vs. Keller; Honolulu, Hawaii

20. Williams vs. LRG Real Estate LP et al.; Kona, Hawaii
21. Rehkopf vs. Kahana Falls et al.; Lahaina, Maui
22. Evans vs. England; Springdale, Washington
23. Idaho Department of Labor vs. Sunset Marts et al.; Orofino, Idaho
24. Karlsson et al. vs. Savage et al.; Los Angeles, California
25. O'Neil vs. Ho; Honolulu, Hawaii (Records Deposition)
26. Ng vs. Hwa et al.; San Francisco, California
27. Tracy vs. Bock et al.; Spokane, Washington
28. Hart Machine vs. Clapp; Minneapolis, Minnesota
29. Parrish et al. vs. Minidoka County Highway Department; Pocatello, Idaho
30. Radke vs. Pacific Hawaiian Holidays, et al.; Honolulu, Hawaii (Arbitration)
31. Oie vs. Himuro; Waikiki, Hawaii
32. Kailieha vs. PRN 'Ekolu dba Scoozies'; Waikiki, Hawaii
33. Keating vs. Fox and Hound; Waikiki, Hawaii
34. Hirukawa vs. Structures International; Honolulu, Hawaii
35. Firestone vs. Milford; Spokane, Washington
36. Oschner vs. BNSF; Laramie, Wyoming
37. Hippler vs. Dittman; Elk, Washington
38. Collins vs. Union Pacific Railroad; Laramie, Wyoming
39. Milford vs. Firestone; Spokane, Washington (Mediation)
40. Zygutis vs. Beech; Waipio Valley, Hawaii (Arbitration)
41. Nazar vs. Amsbury; Spokane, Washington (Mediation)
42. Ejercito vs. Baywatch Production, et al.; Honolulu, Hawaii (Arbitration)
43. Jackson vs. Larson; Moscow, Idaho
44. Bumgraber vs. Safeway; Spokane, Washington
45. George vs. Diamond Parking; Waikiki, Hawaii
46. Koenig vs. Riemer et al.; Kihei, Maui
47. Piggee vs. Chrysler et al.; San Francisco, California

**2001:**
Trials:
1. Plain vs. Murphy Family Farms; Oklahoma City, Oklahoma (Federal)
2. Howard vs. State of Hawaii; Honolulu, Hawaii (State)
3. Wright vs. Chanel; Honolulu, Hawaii (State)
4. Tess vs. Roberts; Spokane, Washington (State)
5. Clyne vs. St. Maries Logging; St. Maries, Idaho (State)
6. Burnham vs. Garber; Spokane, Washington (State)
7. Hilbert vs. Sampson et al.; Reno, Nevada (State)
8. Woodington et al. vs. State of Hawaii; Honolulu, Hawaii (State)
9. B & T Mail Services vs. D & D Transport; Gooding, Idaho (State)

Depositions:
1. Grimes vs. Monterey; Salinas, California
2. Plain vs. Murphy Family Farms; Stillwater, Oklahoma
3. Whittet vs. Four Seasons Resort Hualalai; Kona, Hawaii (Arbitration)
4. Weidler vs. Spring Swing, et al.; Portland, Oregon
5. Champlin vs. Partel; Cody, Wyoming
6. Gardai vs. John Green, et al.; Moscow, Idaho
7. Grant vs. Queen Kapiolani; Waikiki, Hawaii (Arbitration)

8. Giesbrecht vs. Double L; American Falls, Idaho
9. Grogen vs. Huggos; Kona, Hawaii
10. Kong vs. Fletcher Pacific Construction; Kona, Hawaii
11. Diego vs. Cumming et al.; Maui, Hawaii
12. Revai vs. Langdon Tool and Bolt; Twin Falls, Idaho
13. Tess vs. Roberts; Spokane, Washington
14. Tivenan vs. Ilikai Hotel; Waikiki, Hawaii (Arbitration)
15. Colin vs. USA; Santa Rosa, California (Volume 1)
16. Bell vs. Ala Moana Shopping Center; Waikiki, Hawaii
17. Slack vs. Kelleher; Caldwell, Idaho
18. Carmona vs. Guillermo; Honolulu, Hawaii
19. Woodington et al. vs. State of Hawaii; Honolulu, Hawaii
20. Diego vs. Cummings et al.; Wailuku, Maui
21. Wolcott vs. Brooks; Spokane, Washington
22. Anderson vs. Borders; Lihue, Hawaii
23. Montero vs. Sam Will, Inc.; Las Vegas, Nevada (Arbitration)
24. Grogen vs. Huggos; Kona, Hawaii (Arbitration)
25. Delys vs. Sears, Roebuck and Company; Spokane, Washington
26. Hilbert vs. Sampson et al.; Reno, Nevada
27. Waterman vs. Singleton; Spokane, Washington (Arbitration)
28. Dawson vs. JRB Incorporated et al; Boise, Idaho
29. Evans vs. Dunkin Donuts et al.; Baltimore, Maryland
30. Edwards vs. Foster Services; St. Louis Missouri
31. Eades vs. Lisandra, Inc.; Kihei, Hawaii
32. Hurley vs. Nationwide Insurance; Denver, Colorado (Mediation)
33. Saltsman vs. City of Metaline Falls; Spokane, Washington

**2000:**
Trials:
1. Green vs. Pacific Whale Foundation; Lanai, Maui, Hawaii
2. Egersdorf vs. Interstate Brand; Twin Falls, Idaho
3. Woodburn vs. Manco Products; Caldwell, Idaho
4. Kelly vs. Tindall Ranches; Murphy, Idaho
5. Humble vs. Rabanaco; Napa, California
6. Johnson vs. UP Railroad, et al.; Omaha, Nebraska
7. State of Washington vs. Watkins; Colfax, Washington

Depositions:
1. Jones vs. Renner; Cody, Wyoming
2. Potter vs. Gannett; Honolulu, Hawaii
3. Carlson vs. Big Island Foods; Kona, Hawaii (Binding Arbitration Testimony)
4. Koki vs. State of Hawaii; Honolulu, Hawaii
5. Woodburn vs. Manco; Boise, Idaho
6. Brown vs. Sauer; Oakland, California
7. Moradi vs. Flame Control; San Francisco, California
8. Egersdorf vs. Interstate Brands; Twin Falls, Idaho
9. Plummer vs. Dempster, Inc.; Anchorage, Alaska

10. Walker vs. St. Alphonsus; Boise, Idaho
11. Evinger vs. BNSF, Volume 1; Ponca City, Okalahoma
12. Kelly vs. Tindall; Grasmere, Idaho
13. Evinger vs. BNSF, Volume 2; Ponca City, Oklahoma
14. Shimazu vs. Kyo Ya LTD; Waikiki, Hawaii (Arbitration Testimony)
15. Johnson vs. Union Pacific; Lincoln, Nebraska
16. Rollison vs. WalMart; Honolulu, Hawaii (Arbitration Testimony)
17. Lefors vs. City of Spokane, et al.; Spokane, Washington
18. Sandoval vs. State of California; San Francisco, California
19. Quiocho vs. State of Hawaii, et al., Honolulu, Hawaii (Arbitration Testimony)
20. Wright vs. Chanel; Waikiki, Hawaii
21. Manak vs. Hunt; Santa Cruz, California
22. Sin vs. Tihati Productions; Honolulu, Hawaii
23. Babcock vs. Outrigger Hotels; Honolulu, Hawaii
24. Swift vs. OTS; Honolulu, Hawaii (Arbitration Testimony)
25. Corlin vs.Lum; Honolulu, Hawaii
26. Dzakowic vs. Pohokea Point Apartments; Kaneohe, Hawaii
27. Corlin vs.Lum; Honolulu, Hawaii (Arbitration Testimony)
28. Brown vs. Hyatt; Kauai, Hawaii (Arbitration Testimony)
29. McAdam vs. Weirton Steel; Weirton, West Virginia
30. Nye vs. Hadley Auto Transport; Mountain Home, Idaho
31. Broch vs. Voshall (Volume 1); Spokane, Washington
32. Broch vs. Voshall (Volume 2); Spokane, Washington
33. Dunbar v. Roper Whitney; Spokane, Washington
34. Koch v. Saunders; Honolulu, Hawaii (Arbitration Testimony)
35. Rudd vs. Graber Post & Building; Palestine, Illinois

**1999:**
Trials:
1. Murphy vs. Keller Ladder; Spokane, Washington
2. Chivers vs. Las Vegas Hilton; Las Vegas, Nevada
3. Dexheimer vs. Guthrie; Spokane, Washington
4. Huff vs. Royal Cake; Ellensburg, Washington
5. Garnick vs. Teton County School District; Jackson Hole, Wyoming
6. Engle vs. Clearwater County; Orofino, Idaho

Depositions:
1. Mainprize vs. Hotel Pacific; Kauai, Hawaii
2. Howard vs. State of Hawaii; Kauai, Hawaii
3. Rudolph vs. Silver State Disposal; Las Vegas, Nevada
4. Patrick vs. Emro Marketing; Indianapolis, Indiana
5. Nunez vs. Jaminet; Honolulu, Hawaii
6. Engle vs. Clearwater County, Idaho; Orofino, Idaho
7. Steiner vs. Conrail Volume I; Minneapolis, Minnesota
8. Miller vs. Jackson Hole Ski Corporation; Jackson Hole, Wyoming
9. Steiner vs. Conrail Volume II; Minneapolis, Minnesota
10. Ada County vs. Capps; Boise, Idaho
11. Rivera vs. C & W Railroad; Pueblo, Colorado

12. Lind vs. Queen's Hospital; Honolulu, Hawaii
13. Holland vs. Avilla; (Binding Arbitration Testimony); Honolulu, Hawaii
14. Nanez vs. Jack's & Accessories, et al; San Francisco, California
15. Patres vs. Hatco; San Francisco, California
16. Huff vs. Royal Cake; Spokane, Washington
17. Dexheimer vs. Guthrie; Spokane, Washington
18. Garnick vs. Teton County School District; Jackson, Wyoming
19. Oriold vs. Champion Trailer; Cleveland, Ohio
20. Mongeon vs.Chuck's Steak House; Honolulu, Hawaii
21. Rudd vs. McDonald's; (Binding Arbitration Testimony); Honolulu, Hawaii
22. Luyt vs. Volvo; Honolulu, Hawaii
23. De Clue vs. Redding Trucking, et al; Modesto, California
24. Lynch vs. Thaxton, Inc. et al; Wilmington, Delaware
25. Patterson vs. Albertson's; Spokane, Washington
26. Carr vs. Lipton et al; Santa Cruz, California
27. Carlson vs. McDonalds; Kona, Hawaii
28. Sundh vs. Boise City Canal Company; Boise, Idaho
29. Stacey vs. PTI Inc.; Sacramento, California
30. Murphy vs. SIA Security; Sacramento, California