Denise Gendrow, et al
V.
Coyne Mattress Manufacturing Company, et al
Safety Expert Consultant Report
Gary L. Buffington, CSP, CRSP, CSHM, WSO-CSE/CSM/CSS, PI
American Safety Consulting
November 14, 2005

### Introduction

The attorney representing Denise Gendrow, et al, retained me as an expert witness in the field of industrial safety and health. I possess over thirty year's experience in this field. I worked and inspected a number of industrial sites. During my career I have participated in the completion of over $20 billion worth of projects that required over 28 million employee hours of work exposure. At various times throughout my career, I have worked as or served as a representative of the owner, Construction Manager, Design Engineer, Contractor, Subcontractor, Consultant, and craft worker. I am a Certified Safety Professional in both the United States and Canada. My work history, education, and training are discussed in more detail in my curriculum vitae that is attached [Exhibit 1] to this report.

During the past thirty years in the field I have inspected hundreds of pieces of equipment in manufacturing, industrial, construction, and mining settings. I prepared hundreds of Job Safety Analysis concerning the use, maintenance, and repair of a multitude of equipment. The purpose of the Job Hazard Analysis is to break each job down to individual tasks, assess the anticipate hazard exposure of each task, and to eliminate or guard against the said hazard. The Job Hazard Analysis process includes input from the foreman, worker(s) performing the work, and the safety engineer. The AHA process requires an in depth review of the respective equipment manufacturers' operator's, maintenance, and repair manuals for said equipment. I reviewed hundreds of operator's, maintenance, and repair manuals prepared by various manufacturers for the equipment

# EXHIBIT "B"

Chris Bouslog, Esquire
November 14, 2005
Page 2 of 15

Denise Gendrow, et al
v
Coyne Mattress Manufacturing Company, et al

they design, build and distribute.  The Job Hazard Analysis process is a recognized best practice for hazard assessment and is used by safety practitioners throughout the world.  I conducted and/or observed hundreds of training sessions implementing various Job Safety Analyses.

I wrote and reviewed hundreds of Lock Out – Tag Out programs concerning equipment and systems used in manufacturing, industrial, construction, and mining settings.  To develop an effective Lock Out – Tag Out program requires an in depth review of the respective equipment manufacturers' operator's, maintenance, and repair manuals for said equipment.  I reviewed hundreds of operator's, maintenance, and repair manuals prepared by various manufacturers for the equipment they design, build and distribute.  The Lock Out – Tag Out program development is a recognized best practice for hazard assessment and is used by safety practitioners throughout the world.

Attached is a list entitled "Publications Authored (preceding ten years)".  [Exhibit 2]

Attached is a list of Deposition and Trial Cases [Exhibit 3]

## Purpose of Investigation

I was retained by Chris Bouslog, Esquire who represents Denise Gendrow, et al, on this case.  This case involves the fatal injuries of Charles Eugene Gendrow, Jr. sustained when a mattress table unintentionally fell onto Mr. Gendrow on January 15, 2001, at Coyne Mattress Manufacturing Company, 94-134 Leowaena Street in Waipahu, Hawaii.  The purpose of my investigation was to review the relevant documents and render an expert opinion, from a safety and a design safety points of view, whether or not Coyne Mattress Manufacturing Company and/or DRC Corporation, and their respective management personnel were negligent, manufactured equipment that was defective, and

Chris Bouslog, Esquire
November 14, 2005
Page 3 of 15

Denise Gendrow, et al
v
Coyne Mattress Manufacturing Company, et al

adequate warnings were provided to the end use in accordance with safety regulations and/or design safety standards of care in the industry in this case. Mr. Bouslog is employed by the Law Offices of Chris Bouslog; Four Waterfront Plaza, Suite 480; 500 Ala Moana Boulevard, Unit 129; Honolulu, Hawaii 96813-4908.

## Scope of Work

To review the relevant documents; research the applicable local, state, & federal safety standards; and render an expert opinion, from an industrial safety and/or design safety points of view, whether or not Coyne Mattress Manufacturing Company and/or DRC Corporation and their agents, met the standard of care for employers or manufacturers in this case. I shall provide expert testimony in deposition and/or trial as required. I will be compensated at the rate of $175.00 per hour for investigation, document review, research, travel, and deposition & trial testimony along with miscellaneous expenses as incurred. The total cost of the work to be performed is unknown at this time as it depends on the number of hours worked and other expenses incurred.

## Documents Reviewed

Buffington reviewed the following documents and inspected the tilt top mattress cutting table:

1. Honolulu Police Department Incident Report

2. State of Hawaii Division of Occupational Safety and Health (HIOSH) documents

3. James Cash Machine Company, Inc.; Parts catalog for K-10 panel cutter

Chris Bouslog, Esquire
November 14, 2005
Page 4 of 15

Denise Gendrow, et al
v
Coyne Mattress Manufacturing Company, et al

4.  HIOSH citations issued to Coyne Mattress Manufacturing Company

5.  Deposition of Honolulu Police Department with color copies, Lisa Lee-Branco

6.  Deposition of Honolulu Fire Department Dean Matsukawa

7.  Deposition & Exhibits of David R. Cash

8.  Defendant and Third-Party Plaintiff Simon Mattress Manufacturing Company's Response to Third-Party Defendant DRC Corporation's Second Request for Answers to Interrogatories to Defendant and Third-Party Plaintiff Simon Mattress Manufacturing Company

9.  Deposition & Exhibits of Malcolm L. Barcarse

10. Deposition & Exhibits of Donald Erwin Lee

11. Gendrow Case Photographs file and photographs & video taken during my inspection of the tilt top mattress cutting table.

12. Personal inspection of the DRC Corporation tilt top mattress cutting table, the table was inoperable at the time of the inspection.

13. Encyclopedia of Occupational Health and Safety, Volumes I & II; International Labor Office

14. Accident Prevention Manual for Industrial Operations, Administration and Programs & Engineering and Technology; National Safety Council

Chris Bouslog, Esquire
November 14, 2005
Page 5 of 15

Denise Gendrow, et al
v
Coyne Mattress Manufacturing Company, et al

15. Job Safety Analysis Safety Manual; US Department of Labor; Mine Safety and Health Administration

16. Best's Safety and Security Directory

17. Safety Engineering; Gilbert Marshall; Third Edition.

18. The Industrial Operator's Handbook; H. C. Howlett II.

19. Accident Prevention Manual for Industrial Operations; National Safety Council; 8th Edition.

20. Loss Control Management; Frank E. Bird, Jr. and Robert G. Loftus.

21. 29 Code of Federal Regulations (CFR) Part 1910, OSHA & HIOSH Regulations

22. Occupational Safety & Health Act of 1970

### General Information

According to the HIOSH Fatal Investigation Report, Charles Eugene Gendrow, Jr. electrician/field supervisor, age 61 was fatally injured at about 2:45 p.m. on January 15, 2001, when Gendrow was repairing a motor on a cutting table. The cutting table appeared to have fallen onto Gendrow crushing his head between the table and the table braces. At the time of the incident, an electric motor was being disconnected from a cutting table and appeared to have fallen from a vertical position onto Gendrow's head. A & B Electric Company, Inc. employed Mr. Gendrow. The site is located at 94-134 Leowaena Street; Waipahu, Hawaii. Mr. Gendrow's date of birth is March 21, 1939.

Chris Bouslog, Esquire
November 14, 2005
Page 6 of 15

Denise Gendrow, et al
v
Coyne Mattress Manufacturing Company, et al

HIOSH was immediately notified and Clayton Chung, HIOSH Safety and Health Specialist, started an investigation the same day.

The principal operating official for A & B Electric Co., Inc at the time of the accident was: Malcolm L. Barcarse, President.

The principal operating official for Coyne Mattress Manufacturing Company, at the time of the accident was: Donald Erwin Lee, President/Operations Manager.

### Physical Factors Involved

DRC Corporation K-10 Panel Cutter tilt top cutting table. Table lift electric motor.

### Time Line of Events

The following is a time line progression of events leading to the accident on January 15, 2001 (all times are approximate).

**Monday; January 8, 2001:**
Electric motor for the lift step on the DRC Corp tilt top cutting table was not working A&B Electric is called and Mr. Gendrow is sent to check the motor. Mr. Gendrow checked the motor and found it was burned out. He then removed the motor and took it to A&B's work shop to see if the motor could be rewound.

**Tuesday, January 9, 2001:**
Mr. Gendrow attempted to repair the motor, by rewinding it, but was unsuccessful. He informed Malcolm Barcase, the president of A&B Electric, that a new motor was needed.

Chris Bouslog, Esquire
November 14, 2005
Page 7 of 15

Denise Gendrow, et al
v
Coyne Mattress Manufacturing Company, et al

Mr. Barcarse called Mr. Lee at Coyne Mattress and informed him that a new motor was needed. Mr. Lee gave the go ahead to obtain a new motor. Mr. Gendrow called a distributor on the mainland and placed an order for a replacement motor using the identifying numbers on the motor he had removed. He asked that the motor be shipped to the Coyne Mattress address in Waipahu.

**Monday, January 15, 2001:**

At 11:00 a.m. UPS delivered the replacement motor to Coyne Mattress Company. A&B Electric was called and told that the motor had arrived. Mr. Barcarse said he would send Mr. Gendrow after lunch to install it. Mr. Gendrow told Mr. Barcarse that it would take about one hour to install the new motor on the table. Mr. Gendrow arrived at Coyne at 1:00 p.m., obtained the new motor, and went into the cutting room to the table. According to Mr. Valdez the top of the table was in the raised position at this time. At 2:00 p.m. Mr. Gendrow found Mr. Valdez at the loading dock and told him that the new motor did not fit. Both returned to the cutting table where Mr. Gendrow showed Mr. Valdez that the bolt holes in the motor casing did not match the mounting holes in the frame. Mr. Gendrow said he had measured the mounting holes in the casing of the table lift motor and found that it would fit. Mr. Gendrow said he was going to remove the table lift motor and use it for the lift step and would use the new motor for the table lift. After this conversation Mr. Valdez returned to the loading dock. About 2:30 p.m. the employees in the sewing room heard a loud bang. The tilt top table was down and Mr. Gendrow was pinned under it.

**Event**

On January 15, 2001, at approximately 2:45 p.m., Charles E. Gendrow, Jr. received fatal injuries while removing a table lift electric motor when the vertical cutting table

Chris Bouslog, Esquire
November 14, 2005
Page 8 of 15

Denise Gendrow, et al
v
Coyne Mattress Manufacturing Company, et al

unintentionally dropped to a horizontal position crushing Mr. Gendrow's head between a supporting metal beam of the underside of the table top and the support frame.

## Cause of Event

The tilt top table is used to cut fabric for mattresses according to Donald Lee, the operations' manager for Coyne Mattress Manufacturing Company. The top of the table is raised by an electric motor mounted on a support in the center of the frame. It raises the table through a sprocket and chain assembly, which drives a shaft. The shaft has gears on either end, which mesh with gear bars on the sides of the table, which raise and lower it. According to Mr. Lee the table top is left up to facilitate movement in the area. When the table is down it rests on the frame but when raised it is only held in position by the motor. There is no other system to secure the table when it is up. The lift step in the front of the machine allows an employee to be lifted to work on the fabric being layered for a mattress top.

There are four (4) bolts, which secure the lifting motor to the frame. Mr. Gendrow (the victim) had removed the two lower bolts; he then began to loosen the two top bolts. As he did this the restraining ability of the motor mount was compromised. The weight of the table top caused the shaft to try to turn. This caused the loosened motor to shift to the side on which the drive sprocket was mounted. When the motor shifted the chain slipped off the sprocket and the table came down crushing Mr. Gendrow's head between a supporting metal beam on the underside of the table top and the support frame. The table controls and breaker panel are located on the right side of the table, as you face it, within the frame bolts.

Chris Bouslog, Esquire
November 14, 2005
Page 9 of 15

Denise Gendrow, et al
v
Coyne Mattress Manufacturing Company, et al

## Summary

This event should not have happened, and points up the fact that most workers view Lock Out/Tag Out (LOTO) as an electric control procedure. An effective LOTO program will also protect employees from stored energy releases, which could lead to injury or in this case death. Had Coyne done an effective initial LOTO audit they would have identified the removal of the table top lift motor as a hazard requiring the top to be tied off or the step raised to prevent it from falling. Both company's LOTO programs are deficient in that there is no provision for determining which LOTO program to use on the site. If both the victim and the maintenance man had been properly training in their programs they would have discussed the potential hazard of removing the table top lift motor. Had the audit been done the maintenance man would have been aware of the hazard and could have then secured the table top in the upright position and this accident would not have happened.

## Applicable Regulations

Based on my review of the documents and photographs provided by Mr. Bouslog and my personal inspection of the tilt top mattress cutting table, I believe that the following OSHA & HIOSH regulations were openly violated by Coyne Mattress Manufacturing Company personnel.

29 CFR 1903.1 –Purpose and scope.

29 CFR 1910.22–General requirements.

29 CFR 1910.147 –The control of hazardous energy (lockout/tagout).

29 CFR 1910.147(c)(6)(i) –Periodic Inspection.

29 CFR 1910.147(c)(6)(ii) –Certify the periodic inspections.

29 CFR 1910.147(f)(2)(i) –Additional requirements. Outside personnel (contractors, etc.)



Chris Bouslog, Esquire
November 14, 2005
Page 10 of 15

Denise Gendrow, et al
v
Coyne Mattress Manufacturing Company, et al

29 CFR 1910.332 – Training

29 CFR 1910.333 – Selection and use of work practices.

29 CFR 1910.334 – Use of equipment

29 CFR 1910.335 – Safeguards for personnel protection

29 CFR 1910.399 – Definitions applicable to this subpart.

**OSH Act Section 5(a)(1) – The General Duty Clause.**

The employer failed to furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or likely to cause death or serious physical harm to his employees

## Findings

DRC Corporation manufactured, distributed, and sold tilt top mattress table involved in this event.

DRC Corporation did not provide an operator's manual, maintenance manual, or service manual for the tilt top mattress tables that they manufactured, distributed, and sold.

DRC Corporation did not incorporate a method to prevent the collapse of the tilt top mattress cutting table, i.e., raising the lift step on the table, blocking cutting table, or by securing the raise top of the table with a rope or chain.

DRC Corporation did not provide any type of written or visual "WARNING" to the end user of the tilt top mattress cutting table concerning the dangerous condition created when the table lift motor is loosened and/or removed which subsequently causes the vertical cutting table to unintentionally drop to a horizontal position creating a dangerous condition that most likely will result in serious and/or fatal injuries.

Chris Bouslog, Esquire
November 14, 2005
Page 11 of 15

Denise Gendrow, et al
v
Coyne Mattress Manufacturing Company, et al

Coyne Mattress Manufacturing Company purchased the tilt top mattress cutting table from DRC Corporation and used the table in the course of their business.

Coyne Mattress Manufacturing Company did not alter the tilt top mattress cutting table and the table was substantially the same as when it left DRC Corporation's possession. Reportedly, the table had been painted a different color.

Coyne Mattress Manufacturing Company used the tilt top mattress cutting table in a reasonably foreseeable manner.

Coyne Mattress Manufacturing Company hired A&B Electric, Inc. to replace an electric motor that was not working.

Charles E. Gendrow, Jr. was employed as an electrician/field supervisor by A&B Electric, Inc., at the time of the accident. He had ten years experience with this company. Mr. Gendrow had performed work a number of times at the Coyne Mattress Manufacturing Company facility.

Coyne Mattress Manufacturing Company has a written Lock Out - Tag Out program.

A&B Electric, Inc., has a written Lock Out - Tag Out program.

Coyne Mattress Manufacturing Company did not conduct an annual or more frequent inspection of the energy control procedure to ensure that the procedure and requirements of the Lock Out – Tag Out standard were followed.

Chris Bouslog, Esquire
November 14, 2005
Page 12 of 15

Denise Gendrow, et al
v
Coyne Mattress Manufacturing Company, et al

Coyne Mattress Manufacturing Company did not certify that periodic inspections of the energy control procedures had been performed as required by the Lock Out – Tag Out standard.

Coyne Mattress Manufacturing Company as an on-site employer and A&B Electric, Inc. (outside employer/contractor) did not inform each other of their respective Lock Out – Tag Out programs as required by the standard.

Coyne Mattress Manufacturing Company did not ensure that the respective Lock Out – Tag Out programs were followed.

Coyne Mattress Manufacturing Company did not prepare a Job Hazard Analysis on the maintenance and repair work performed on the tilt top mattress cutting table and electric motors.

## Conclusions

Based on my education, experience, and training, as well as my research and review of documents in connection with this particular assignment and my personal inspection of the tilt top mattress cutting table, I render the following opinions.

1. It is my professional opinion that, from a safety point of view, Coyne Mattress Manufacturing Company and their agents fell far below the standard of care in the manufacturing industry with their failure to develop, implement and maintain a "Lock Out – Tag Out" program that complied with the standard of care in the industry, i.e. conduct initial & annual audits and training their employees and contractor employees; identify and eliminate hazards posed by electrical and mechanical energy such as those presented by the cutting table.

Denise Gendrow, et al
v
Coyne Mattress Manufacturing Company, et al

2. It is my professional opinion that, from a safety point of view, Coyne Mattress Manufacturing Company and their agents fell far below the standard of care in the manufacturing industry with their failure to abide by and ensure that their contractor employees abide by the provisions of their own "Lock Out – Tag Out" program which included a procedure for controlling stored energy which directed the company to "block or brace all parts that could fall because of gravity".

3. It is my professional opinion that, from a safety point of view, Coyne Mattress Manufacturing Company and their agents fell far below the standard of care in the manufacturing industry with their failure to provide their employees and Charles E. Gendrow, Jr. a work place that was free of recognized hazards that caused his death.

4. It is my professional opinion that, from a safety point of view, Coyne Mattress Manufacturing Company and their agents fell far below the standard of care in the manufacturing industry with their failure to ensure that their employees and their contractor employees understood the hazard recognition training required by OSHA as the training pertained to maintenance and repair work on the tilt top mattress table involved in this accident.

5. It is my professional opinion that, from a safety point of view, Coyne Mattress Manufacturing Company and their agents were negligent and fell far below the standard of care in the manufacturing industry with their failure to prepare a Job Hazard Analysis on the maintenance and repair work performed on the tilt top mattress cutting table and electric motors.

6. It is my professional opinion that, from a safety point of view, Coyne Mattress Manufacturing Company did not alter the tilt top mattress cutting table and the




Chris Bouslog, Esquire
November 14, 2005
Page 14 of 15

Denise Gendrow, et al
v
Coyne Mattress Manufacturing Company, et al

table was substantially the same as when it left DRC Corporation's possession. Reportedly, the table had been painted a different color.

7.  It is my professional opinion that, from a safety point of view, the tilt top mattress cutting table was defectively designed by DRC Corporation and their agents and the tilt top mattress cutting table constituted an unreasonably dangerous condition to end user workers performing maintenance and/or repair work on the table top lift motor. DRC Corporation and their agents fell far below the standard of care in the manufacturing industry with their failure to protect Charles E. Gendrow, Jr. who received fatal injuries while removing a table lift electric motor when the vertical cutting table unintentionally dropped to a horizontal position crushing Mr. Gendrow's head between a supporting metal beam of the underside of the table top and the support frame.

8.  The recognized hierarchy for dealing with hazards in the fields of engineering and safety is to: (1) design out the hazard; if that is not possible or feasible; (2) guard the hazard; and if that is not possible or feasible, then (3) warn of the hazard.

9.  It is my professional opinion that, from a safety point of view, the tilt top mattress cutting table was defective in that when the table lift electric motor was loosened while the cutting table was in a vertical position the cutting table unintentionally dropped without warning to a horizontal position crushing Mr. Gendrow's head. DRC Corporation and their agents fell far below the standard of care in the manufacturing industry with their failure to incorporate a method to prevent the collapse of the tilt top mattress cutting table, i.e., raising the lift step on the table, blocking cutting table, or by securing the raise top of the table with a rope or chain.

Chris Bouslog, Esquire
November 14, 2005
Page 15 of 15

Denise Gendrow, et al
v
Coyne Mattress Manufacturing Company, et al

10.  It is my professional opinion that, from a safety point of view, DRC Corporation and their agents were negligent and fell far below the standard of care in the manufacturing industry with their failure to provide a "WARNING" of the dangerous condition created when the table lift motor was loosened and/or removed which subsequently causes the vertical cutting table to unintentionally drop to a horizontal position creating a dangerous condition that resulted in a fatal injury.

In closing, it is my professional opinion that basic compliance with "Lock Out – Tag Out" and hazard awareness standards and the standard of care in the manufacturing industry by Coyne Mattress Manufacturing Company and DRC Corporation and their respective management and employees would have prevented this accident.

This report is based on the documents received to date.   Additional documents are anticipated and upon review of those documents I, if necessary shall provide a supplement report.

Respectfully submitted,

Gary L. Buffington, CSP, CRSP, CSHM, WSO-CSE/CSM/CSS, PI
AMER ICAN SAFETY CONSULTING

**Gary L. Buffington, CSP, CRSP, CSHM, PI**

**EXHIBIT 1**

**CURRICULUM VITAE**

------------------------------**EDUCATION**------------------------------

| Date | School Attended | Degree Received | Remarks |
|------|-----------------|-----------------|---------|
| 1967 - 1971 | Black Hills State University Spearfish, South Dakota | BS Business Education | |
| 1972 | University of South Dakota Vermillion, South Dakota | AA Criminal Justice | Graduate Criminal Justice Program |
| 1973 | South Dakota Division of Criminal Investigation Academy Pierre, South Dakota | | State Law Enforcement Officer Certification |
| 1972 - 1974 | University of South Dakota Vermillion, South Dakota   * Need to complete orals | MS   42 Hours | Graduate Criminal Justice Program |
| 1974 | University of Minnesota St. Paul, Minnesota | 12 Hours | Graduate Criminal Justice, Sociology, Government |
| 1977 | Reid College Chicago, Illinois | 5 Hours | Graduate Behavioral Science, Law |
| 1977 - 1978 | National Mine Safety & Health Academy Beckley, West Virginia | | Auth. Rep. Sec. Labor |

------------------------------**PROFESSIONAL MEMBERSHIPS**------------------------------

| | |
|---|---|
| National Safety Council | Member |
| American Society of Safety Engineers | Professional Member |
| Association for Canadian Registered Safety Professionals | Professional Member |
| American National Standards Institute A-10 Committee | Member |
| Voluntary Protection Participants Association | Member |
| World Safety Organization | Professional Member |
| Institute of Safety & Health Management | Professional Member |



**Gary L. Buffington, CSP, CRSP, CSHM, PI**

**EXHIBIT 1**

**CURRICULUM VITAE**

-------------------------- **REGISTRATION/CERTIFICATION** --------------------------

| | | | |
|---|---|---|---|
| Board of Certified Safety Professionals | CSP | No. 10791 | National |
| Canadian Reg. Safety Professionals | CRSP | No. 92-766 | Canada |
| World Safety Organization | | | |
|     Certified Safety Executive | WSO-CSE | No. 607 | World |
|     Certified Safety Manager | WSO-CSM | No. 694 | World |
|     Certified Safety Specialist | WSO-CSS | No. 566 | World |
| Certified Industrial Hygienist | US DOL - MSHA | | National |
| Certified Emergency Medical Technician | | | National |
| Licensed Private Investigator | | | Florida |
| Certified Law Enforcement Officer | | | South Dakota |
| US DOL-MSHA Certified Instructor | | | National |
| US DOL-OSHA Certified Instructor | | | National |

-------------------------------- **PROFESSIONAL AWARDS** --------------------------------

| | |
|---|---|
| Police Officer of the Year (1975-1976) | Sundown Optimist Club |
| Meritorious Achievement Award (1979) | US Dept. of Labor - MSHA |
| **Motor Vehicle Operator Safe Driving Award (1980)** | US Dept. Of Labor - MSHA |
| Special Achievement Monetary Award (1980) | US Dept. of Labor - MSHA |
| Monetary Award (1982) | US Dept. of Labor -MSHA |
| Who's Who in the World (1992-2005) | Marquis |
| Who's Who in the East (1991-1992); (1992-1993) | Marquis |
| Who's Who of Emerging Leaders in America (1992-2005) | Marquis |
| Who's Who in Finance and Industry (1992-2005) | Marquis |
| Who's Who in Science and Engineering (1992-2005) | Marquis |
| Who's Who in the Safety Profession (1990-2005) | The Center for Safety Education<br>National Security Institute |

**Gary L. Buffington, CSP, CRSP, CSHM, PI**

EXHIBIT 1

### CURRICULUM VITAE

| CRIMINAL JUSTICE TRAINING | | |
|---|---|---|
| Date | Course | Course Description |
| 1972 | Criminal Investigation Academy | Criminal Investigations; Firearms Training; Police; Report Writing; Laws of Evidence; Interviewing Interrogation |
| 1973 | Civil Disorder Management | Civil Disorder Management, Response Procedures |
| 1973 | SWAT Training | Special Weapons and Tactics Training |
| 1973 | Police School Liaison Clinic | Police - School Community Relations, Juvenile Justice |
| 1974 | Juvenile Officers Institute | Sociology, Child Psychology, Communications, Juvenile Court, Law |
| 1974 | Drug Enforcement Administration School | DEA Law and Procedures; Surveillance; Drug Identification/Detection. |
| 1975 | Police Community Relations Seminar | Police Community Relations |
| 1975 | North Central/Canadian Crime Commission Conference | International Drug Trafficking; Sale of Stolen Heavy Construction Equipment; Criminal Suspect Behavioral Patterns |
| 1976 | National Homicide Institute | Law of Homicide; Crime Scene Investigation, Toxicology; Forensic Pathology; Autopsy; Trial Preparation/Presentation |
| 1976 | Child Abuse Seminar | Law of Child Abuse; Investigative Procedures; Juvenile Court System; Human Services Responsibilities; Arrest, Search and Seizure; Trial Preparation Presentation |
| 1977 | Behavioral Science Course | History of Interview/Interrogation, Polygraph History and use; Elements of Confessions; Legal Aspects Of Interrogation |
| 1978 | Special Investigations Conference | Federal MSHA Act, Discrimination and Knowing/Willful Violations |
| 1978 | MSHA Criminal Investigation Seminar | Law; Evidence Collection/Preservation; Court Demeanor |

Gary L. Buffington, CSP, CRSP, CSHM, PI

EXHIBIT 1

**CURRICULUM VITAE**

| TRAINING RECORD | | |
|---|---|---|
| **Date** | **Course** | **Course Description** |
| 1977<br>1978<br>1979<br>1980<br>1981<br>1982<br>1983 | First Aid | First aid procedures for life threatening conditions and treatment of specific injuries |
| | Self Rescuer Devices | Maintenance and use of the device in rich carbon monoxide atmospheres |
| | Mine Rescue | Emergency procedures in underground rescue operations |
| | CPR | Basic life support methods |
| | Mine Ventilation | Principals of ventilating a mine |
| | Mine Gases | Identification of various toxic gases |
| | Mine Radiation | Identification of source and prevention |
| | Defensive Driving | Methods used to drive defensively |
| 1977<br>to<br>1978 | Technical Writing<br>Oral Communications<br>Mathematics<br>Accident Investigation<br>Health Inspection Procedures<br>Hoisting<br>Ventilation<br>Ground Control<br>Industrial Hygiene<br>Radiation    -    Dust Sampling<br>Welding Fumes -    Noise Sampling<br>Respirators<br>Accident Prevention<br>Basic Electricity<br>Explosives & Blasting<br>Fire Prevention<br>Load, Haulage & Dumping<br>Safety Lamps<br>Shop Safety<br>Equipment Safety<br>Mine Rescue<br>Inspection Procedures<br>Mine Electricity | Courses required to become **certified as an Authorized Representative of the Secretary of Labor** |

**Gary L. Buffington, CSP, CRSP, CSHM, PI**

EXHIBIT 1

### CURRICULUM VITAE

| TRAINING RECORD | | |
|---|---|---|
| **Date** | **Course** | **Course Description** |
| 1978 | Legal Aspects of the MSHA Act of 1977 | Instruction on civil and criminal legal aspects for government enforcement |
| 1978 | MSHA Act of 1977, Section 105 (c) | Instruction on discrimination section for government enforcement |
| 1978 | University of Alabama Criminal Justice | Investigative procedures and techniques as applicable to government investigators |
| 1979 | EEO Counseling | Basic Training for EEO Counselors |
| 1980 | Communications/Human Relations | Communication skills needed by DOL Supervisors |
| 1981 | EEO Training | EEO Training for managers |
| 1981 | NCFLL Contract Administration | DOL Supervisors and managers training in labor relations |
| 1981 | Human Side of Management | Management techniques for DOL supervisors |
| 1981 | Mine Disaster Preparedness | Procedures to be used following mine emergencies |
| 1981 | DuPont Sodium Cyanide Safety | The correct use and storage of sodium cyanide in milling operations |
| 1981 | Applied Supervision | Training in the basic principals of supervision |
| 1981 | USBM Fire Protection | State of the art fire suppression systems in industrial applications |
| 1981 | Employee Performance Standards | Basic training for supervisors on employee evaluations |
| 1981 | Serious Violation Seminar | The writing and documentation of significant and substantial violations |
| 1981 | Mine Ventilation Surveys | Training on how to conduct ventilation surveys in multilevel underground mines |
| 1982 | Reorganization Transition Training | For supervisors on reorganization of MSHA |
| 1982 | Transition Training of 30 CFR, Part 100 | For supervisors on violation assessment procedures |

**Gary L. Buffington, CSP, CRSP, CSHM, PI**

EXHIBIT 1

**CURRICULUM VITAE**

| TRAINING RECORD | | |
|---|---|---|
| **Date** | **Course** | **Course Description** |
| 1982 | Practice of Management | Course designed to enhance the management skills of supervisors |
| 1982 | Mine Disaster Procedures | Concerned with the procedures to be used following mine emergencies |
| 1982 | Mobile Crane & Rigging Consideration | Study of OSHA/ANSI regulations covering mobile cranes and rigging equipment. Onsite inspection of mobile cranes |
| 1983 | Accident Prevention Techniques | Discusses current principles and techniques of accident prevention |
| 1983 | Respirator Fit Training | Demonstrated the proper fit, use, and maintenance of respiratory protective equipment. |
| 1983 | Permissibility | Provides an understanding of theory and an application of principles of permissible equipment to be used in gassy mines. |
| 1983 | Field Certification Training | Procedures to be followed to certify permissible equipment in the field. |
| 1983 | Radiation Monitoring | Advanced course covering radiation health hazards in mining |
| 1983 | Emergency Medical Technician Training | Preparation for the National Registry of Emergency Medical Technicians Examination |
| 1984 | Fall Protection | Course covering various fall protection methods |
| 1984 | Gas Cutting and Welding | Basic safety during gas cutting and welding operations |
| 1984, 1985 | Radiation Training | Courses covering radiation hazards during power plant construction |
| 1985 | Helicopter Emergency Response Training | Field exercise in the helicopter transporting of injured personnel |
| 1985 | Personal Profile System | Develop interpersonal communication skills |

**Gary L. Buffington, CSP, CRSP, CSHM, PI**

EXHIBIT 1

**CURRICULUM VITAE**

| TRAINING RECORD | | |
|---|---|---|
| **Date** | **Course** | **Course Description** |
| 1985 | Crane Safety | Field exercise - study and onsite crane and rigging inspections per OSHA Regulations. Also discussed the new OSHA manbasket standard |
| 1985 | Safety Belts and Lanyards | Demonstration of the proper use and maintenance of safety belts/lanyards |
| 1985 | Florida Right-to-Know-Law | Florida requirements concerning hazardous chemicals |
| 1985 | National Safety Council Congress and Exposition | OSHA voluntary Protection Programs. Methods to reduce Workers Compensation Costs |
| 1985 | Elevated Victim Rescue Training | Topics included ropes and knots, rescue, repelling, and use of the stokes basket |
| 1985 1986 | News Media Communication | Demonstrated methods used in interfacing with the news media |
| 1986 | OSHA's Voluntary Protection Program | Discusses various OSHA voluntary protection programs available |
| 1986 | American Occupational Health Conference | Industrial hygiene health problems and methods of compliance |
| 1986 | Fire Fighting Training | Use of fire extinguishers, Scott Air PACs, and fire hydrant-hose work |
| 1986 | Managing Interpersonal Relationships | Enhance interpersonal communication skills |
| 1988 | Communication Seven Basic Habits | Seven basic habits of highly effective people |
| 1990 | ASSE-CSP Workshop | CSP Core Exam Workshop |
| 1990 | Introduction to MS-DOS | Black and Veatch MS-DOS Computer Course |
| 1991 | Mine Rescue Training | Mine emergency training; mine gases; ventilation; use, care, maintenance Dragger BG 174A SCBA |
| 1991 | ASSE-CSP Workshop | CSP Comprehensive Practice and Specialty Workshop |



**Gary L. Buffington, CSP, CRSP, CSHM, PI**

**EXHIBIT 1**

**CURRICULUM VITAE**

| TRAINING RECORD | | |
|---|---|---|
| **Date** | **Course** | **Course Description** |
| 1992 | Construction Excavations/Trenching Course | 29 CFR 1926.650 Course; Excavations, Trenching, and Shoring |
| 1992 | OSHA Construction Course | 10-Hour Construction Safety and Health Course |
| 1993 | OSHA 500 Course | Basic Instructor Course in OSHA Standards for the Construction Industry |

--------------------**TECHNICAL PAPERS, PRESENTATIONS, PUBLICATIONS**----------------

**Date**

1974    "Police-School Liaison Program"; Rapid City School System; Forty Presentations - Elementary, Junior/Senior High Schools; Rapid City, South Dakota.

1975    "Police - School Liaison Program"; Pennington County School System; Twenty Presentations Throughout Pennington County, South Dakota.

1975-    "Drug Education Program"; Rapid City School System; Thirty Presentations - Elementary,
1976    Junior/Senior High Schools; Rapid City, South Dakota.

1976-    "Drug Education Program"; Pennington County School System; Twenty Presentations -
1977    Elementary, Junior/Senior High Schools; Throughout Pennington County, South Dakota.

1978-    "Special Investigator Training"; Mine Safety and Health Administration; Dallas, Texas;
1979    Denver, Colorado; Birmingham, Alabama; Beckley, West Virginia; and Duluth, Minnesota.

1979    "Final Report of Mine Explosion Disaster"; Belle Isle Mine; Franklin, Louisiana; U.S. Department of Labor - MSHA; Arlington, Virginia.

1984    "The Stanton Energy Center Labor Management Program"; National Conference, Building and Construction Trades Department AFL-CIO; Hollywood, Florida.

1985    "The Design of a Voluntary Protection Program Application"; Voluntary Protection Participants Associations; Atlanta, Georgia.

1991    "HAZ MAT OPERATIONS"; Eleventh Symposium on the Occupational Health and Hazards of the Fire Service; International Association of Fire Fighters, AFL-CIO, CLC: Las Vegas, Nevada.



**Gary L. Buffington, CSP, CRSP, CSHM, PI**

**EXHIBIT 1**

**CURRICULUM VITAE**

------------------------------------------EXPERIENCE RECORD------------------------------------------

| DATE | COMPANY & JOB TITLE | JOB DESCRIPTION |
|------|---------------------|-----------------|
| 1966-1972 | Homestake Mining Company Lead, South Dakota<br><br>Miner First Class-Shaftman | Worked as a contract miner/leadman. Performed all phases of mining. Inspected/maintained steel and wooden shafts that were one mile deep. **Served as union grievance man.** Largest underground gold mine in the Western Hemisphere, 3500 miners. |
| 1972-1977 | Pennington County Sheriff's Department Rapid City, South Dakota<br><br>Deputy Sheriff - Criminal Investigator | Planned and coordinated multi-law enforcement/complex felony investigations. Gained thorough knowledge of criminal law while working several hundred investigations. Prepared comprehensive, detailed and factual investigation reports used by prosecuting attorneys. Conducted hundreds of interviews and interrogations. Testified at numerous pre-trials, jury trials, and post-trial hearings. Member of the SWAT Team. |
| 1977-1979 | U.S. Department Of Interior Mining Enforcement and Safety Administration Birmingham, Alabama<br><br>Federal Mine Inspector | Conducted Health and Safety inspections of surface/underground mines, mills, quarries, and related facilities. Conducted fatal and non-fatal accident investigations. Evaluated safety and health training plans, and provided mine emergency services. **Served on committee to rewrite MESA/MSHA regulations.** Monitored MESA/MSHA funded grants. |
| 1979-1981 | U.S. Department of Labor Mine Safety and Health Administration Birmingham, Alabama<br><br>Supervisory Special Investigator | Planned, directed, and reviewed the work of a professional staff of 10 investigators. Initiated, planned, and reviewed all investigations to determine the presence of criminal and/or civil violations or acts of discrimination pursuant to the MSHA Act of 1977. Served as an **expert witness** in numerous legal proceedings concerning MSHA health, safety, and special investigations . Participated in joint investigation by MSHA and the office of the Inspector General concerning the Belle Isle Mine Explosion. Served as a **Grand Jury Agent** working with Regional U.S. Attorney. |

**Gary L. Buffington, CSP, CRSP, CSHM, PI**

**EXHIBIT 1**

**CURRICULUM VITAE**

---------------------------------------EXPERIENCE RECORD---------------------------------------

| DATE | COMPANY & JOB TITLE | JOB DESCRIPTION |
|------|--------------------|-----------------|
| 1981-1983 | U.S. Department of Labor Mine Safety and Health Administration Grand Junction, Colorado<br><br>Supervisory Mine Inspector | Directed staff of 13 professionals to enforce MSHA regulations. Responsible for the inspection activities of approximately 150 underground mines and surface mills located in Western Colorado. Responsible for fatal/non-fatal mine accident investigations. Developed and trained inspection personnel to a high proficiency in **Industrial Hygiene Health Inspection and Abatement Techniques.** Supervised complex criminal investigation concerning the sale and distribution of permissible diesel mining equipment to gassy mine operations. Coordinated investigation with Office of the Solicitor, U.S. Department of Justice, Office of the Inspector General, and National MSHA Headquarters Office. |
| 1983-1990 | Black & Veatch Engineers-Architects Orlando, Florida Kansas City, Missouri<br><br>Loss Control Manager | Developed and implemented **Project Safety, Health, and Security Programs** for Rawhide Energy Center, Stanton Energy Center, and Thames Co-generation Power Plant while under construction. Directed staffs of 20 to 40 professionals to maintain safety/security for 800 to 1600 construction personnel. Developed only **OSHA CERTIFIED STAR PROGRAM** completed on a Union/Merit Shop Project. Accident statistics were less than half of the national averages. **No fatalities experienced in over 14 million man-hours worked. Labor relation's** experience in union/merit shop projects. Administered **wrap-up insurance programs**. Served as **expert witness** in legal proceedings concerning risk management. |

**Gary L. Buffington, CSP, CRSP, CSHM, PI**

**EXHIBIT 1**

**CURRICULUM VITAE**

---------------------------------EXPERIENCE RECORD-----------------------------------

| DATE | COMPANY & JOB TITLE | JOB DESCRIPTION |
|------|--------------------|-----------------|
| 1990-1992 | Black & Veatch Engineers-Architects<br>Kansas City, Missouri<br><br>Loss Control Manager | Developed and implemented **Project Safety and Health Programs** for J.A. McCullough, Stanley Canyon Tunnel; Kansas City Water and Pollution Control Department. Trans-Missouri River Tunnel (**Gassy**); and Mobil Refinery, Mobil Lube Blending and Packaging Plant. Projects included tunnel and refinery construction. Experienced in **Labor Relations** involving Union and Merit Shop personnel. Served as an **expert witness** in Mid-Connecticut Resources Boiler Explosion, Hartford, Connecticut; and Ford Motor Company Tunnel Explosion, Detroit, Michigan. Trained 70 Kansas City Fire Department and contractor personnel in Mine Rescue. |
| 1992-1995 | Parsons-Dillingham<br>Metro Rail Construction Manager<br>Los Angeles, California<br><br>Manager, Safety and Security | Develop and implement **Project Safety And Health Programs for the Metro Red Line** Segments 2 and 3. Direct staffs of 10-20 professionals to maintain safety/security programs for 1500 to 2000 construction personnel. Project costs projected at $1.5 to 2 billion annually. Tunnels excavated with state-of-the-art tunnel boring machines in accordance with gassy tunnel regulations. Participates in **wrap-up insurance program**. Analyzes all aspects of risk management, liability and workers' compensation insurance coverage. Reduced project OSHA Recordable, Lost Time, and Lost Work Day Case Rates by over 50 per cent. Safety performance has saved the clients millions of dollars. No fatalities experienced in over 14 million employee hours worked. |



**Gary L. Buffington, CSP, CRSP, CSHM, PI**

**EXHIBIT 1**

### CURRICULUM VITAE

--------------------------------------**EXPERIENCE RECORD**--------------------------------------

| DATE | COMPANY & JOB TITLE | JOB DESCRIPTION |
|------|---------------------|-----------------|
| 1995-1999 | Los Angeles County Metropolitan Transportation Authority Los Angeles, California<br><br>Assistant Director, Construction Safety | Develop and implement the Project Construction/ Environmental Safety and Health Programs for the Metro Red Line Segments 2 & 3. Direct staff of 22 safety professionals. 1500 to 2000 construction personnel onsite. Assist in review, interpretation, development, and revision of contract specifications and set policies concerning the above disciplines. Provide technical assistance to rail transit systems relative to the above disciplines. Direct safety & health audits, review submittals, prepare position & other reports, and participate in rail transit system meetings with MTA, contractor/subcontractor, insurance, FED/OSHA, CAL/OSHA, county, city, and consultant personnel. Conduct & provide administrative support for accident investigations. Develop & conduct Construction/System / Environmental safety and health training. Serve as an Expert Witness in federal and state court litigation. Working knowledge of Cal-OSHA, OSHA, NFPA, ANSI, NEC, NCR, and MSHA Standards. **Serve on the ANSI A-10 Accredited Construction Standards Committee.** Participate in the current revision of the CAL/OSHA Tunnel Safety Orders. |
| 1998-2003 | | **Serve as Administrator for ASSE Mining Division** |
| 1990-Present | American Safety Consulting Los Angeles, California<br><br>Owner-Expert Witness-Licensed Private Investigator | Provide expert witness, accident investigation, safety audit, safety & mine rescue training services to various clients. Over twenty-five years experience in the industrial, heavy construction, petrochemical, and mining industries. Serve as an expert witness in both government and private sectors. |