ORIGINAL

Of Counsel
MacDONALD RUDY BYRNS
O'NEILL & YAMAUCHI

STEPHEN B. MacDONALD  1545-0
RALPH J. O'NEILL  4705-0
1001 Bishop Street
Suite 2650, Pacific Tower
Honolulu, Hawaii  96813
Telephone: (808) 523-3080
Attorneys for Defendant and Third-Party
Plaintiff SIMON MATTRESS
MANUFACTURING COMPANY

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
JAN 27 2006
at 11 o'clock and 10 min. A M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DENISE GENDROW, individually and as Personal Representative of THE ESTATE OF CHARLES EUGENE GENDROW, JR.; CHARLES E. GENDROW III, and JEANNE SMITH,<br><br>Plaintiffs,<br><br>vs.<br><br>SIMON MATTRESS MANUFACTURING COMPANY dba COYNE MATTRESS MANUFACTURING COMPANY; SERTA MATTRESS CORPORATION; JOHN DOES 1-10; DOE CORPORATIONS 2-10; DOE PARTNERSHIPS 1-10; DOE GOVERNMENTAL ENTITIES 1-10; DOE UNINCORPORATED ASSOCIA- | Civil No.  CV03 00034 BMK<br><br>REPLY OF DEFENDANT AND THIRD-PARTY PLAINTIFF SIMON MATTRESS MANUFACTURING COMPANY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT FILED DECEMBER 2, 2005; CERTIFICATE OF SERVICE<br><br>HEARING:<br>DATE:  February 8, 2006<br>TIME:  9:00 a.m.<br>JUDGE:  HON. BARRY M. KURREN<br><br>Trial: May 16, 2006 |

```
TIONS 1-10;                              )
                                         )
            Defendants.                  )
                                         )
_____    )
                                         )
SIMON MATTRESS                           )
MANUFACTURING COMPANY,                   )
                                         )
            Defendant and                )
            Third-Party                  )
            Plaintiff,                   )
                                         )
      vs.                                )
                                         )
DRC CORPORATION,                         )
                                         )
            Third-Party                  )
            Defendant.                   )
_____    )
```

### REPLY OF DEFENDANT AND THIRD-PARTY PLAINTIFF SIMON MATTRESS MANUFACTURING COMPANY TO MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT FILED DECEMBER 2, 2005

#### Introduction

This memorandum is offered by Defendant and Third-Party Plaintiff SIMON MATTRESS MANUFACTURING COMPANY ("Simon") in Reply to the Memorandum filed herein on January 23, 2006 by Plaintiffs in Opposition to Simon's pending Motion for Summary Judgment ("Memo in Op") filed herein on December 2, 2005.

For purposes of the issues raised by Simon's Motion, there are no disputed material facts. The only question is whether, as a matter of law, the undisputed facts support the imposition of a duty of care on Simon in connection with the fatal accident which gives rise to the *Gendrow* lawsuit.

## **Plaintiffs' Discussion of the Facts**

Plaintiffs posit different ways that the undisputed facts might be construed. First, Plaintiffs suggest that the alleged "hazard" posed by the raised table top table was either obvious and apparent, or it was neither obvious nor apparent. Memo in Op, p. 5. The simple fact is that there existed no "hazard" up until the point in time when Charles Eugene Gendrow, Jr. (Plaintiffs' Deceased) ("Mr. Gendrow") unilaterally began to remove the electric table top motor as part of his plan to repair/replace the failed lift step motor. Until that point in time, there existed no inherent danger. Any "hazard" arose not from the vertical position of the table top (one of the cutting table machine's standard and designed operating positions), but rather from Mr. Gendrow's decision to remove the table top motor which supported the table top in its vertical position. Then and only then could the table top involuntarily rotate to the horizontal position.

Second, Plaintiffs suggest that the accident could have been avoided had Mr. Gendrow and Mr. Valdez (a Simon employee) discussed the potential

"hazard" and/or had Simon properly implemented a lock-out/tag-out program. Memo in Op, p. 5. Again, whatever spin Plaintiffs place on the undisputed facts, there is no evidence to suggest that anyone other than Mr. Gendrow created the very "hazard" about which Plaintiffs now complain. In hindsight, any accident can be avoided. However, whether the accident could have been avoided is not the issue before the Court. The issue before the Court is whether Simon, as the employer of an independent contractor, has any legal duty to abate or avoid a "hazard" created by the contractor's own employee.

Plaintiffs suggest that there's an issue whether Simon "failed to identify to stored energy [sic] of the raised table top as a potential hazard." Memo in Op, pp. 6-7. Plaintiffs' formulation of the issue begs the question. The "hazard" isn't the raised or vertical position of the table top. Had Mr. Gendrow not started dismantling the machine, the table top couldn't have rotated. The "hazard" only arose when Mr. Gendrow decided to compromise the mechanism which supported the table top in its vertical position.[1]

### The *Michel* and *Taira* Cases

In their opposition, Plaintiffs implicitly recognize that *Michel v.*

---

[1] What Mr. Gendrow did is akin to sawing off one leg from a three-legged table. With all three legs in place, there is no "hazard" that the table will fall over. The "hazard" only arises when one leg of the table is removed.

*Valdastri, Ltd.*, 59 Haw. 53, 575 P.2d 1299 (1978) ("*Michel*"), and *Taira v. Oahu Sugar Company*, 1 Haw.App. 208, 616 P.2d 1026 (Haw. App. 1980) ("*Taira*") are the controlling Hawaii appellate decisions. Both are analyzed in detail in Simon's moving papers. While trying to avoid *Taira*, Plaintiffs argue that *Michel* supports the imposition of a duty of care on Simon.

In support of their argument, Plaintiffs quote from *Michel*:

> The Scope of this duty includes . . . the duty to warn of latent defects existing before the work is started that are known to the employer, but are not readily observable by the employee . . . . [Memo in Op, p. 7].

In the *Gendrow* case, the alleged "defect" (i.e., the ability of the table top to involuntarily rotate from the horizontal to the vertical position) didn't exist before Mr. Gendrow's work started. His work created the "defect." Moreover, there is no evidence that the alleged "defect" was "known" (or could have been "known") to Simon before the work started. Quite simply, the "defect" couldn't have been "known" to Simon before the work started because it did not exist before the work started.

Plaintiffs quote further from *Michel*:

> The scope of this duty includes: . . . The employer of an independent contractor will also be liable . . . if he retains some control or supervision over the work which negligently injures the employee. [Memo in Op, p. 7].

In *Gendrow,* there is no evidence that Simon retained any control over Mr. Gendrow or supervised his work. The undisputed evidence is that Mr. Gendrow alone decided on the manner and method of repairing the machine. There is evidence that, just before doing the repair work, Mr. Gendrow informed a Simon employee that he intended to switch the motors. That is not evidence of supervision or control by Simon over Mr. Gendrow.[2] *Taira,* 1 Haw.App. at 211-12.

>   Plaintiffs quote further from *Michel*:
>
>   The scope of this duty includes: . . . the employer is liable for an injury to an employee of an independent contractor caused by the negligence of the employer. [Memo in Op, p. 8].

As made clear in *Taira*, before their can be negligence, there must first be a recognized legal duty of care. In *Taira*, the Hawaii Intermediate Court of Appeals held that the employer of an independent contractor is not liable, as a matter of law, for dangerous conditions created by or arising out of the manner or method in which the independent contractor's work is prosecuted. The Hawaii Intermediate Court emphasized that the *Michel* standard is inapplicable where (as in *Gendrow*) the employer does not exercise direction and control over the repair work, and

---

[2] By definition, an independent contractor is one who controls the manner or method by which the work is accomplished.

where (as in *Gendrow*) there is no connection between the employer's duty to provide a safe place to work and the accident. *Taira*, 1 Haw.App. at 213.[3] In that regard, prior to Mr. Gendrow's inception of work, the "hazard" (which Plaintiffs claim Simon should have abated) did not even exist.

Interestingly, in connection with their reliance upon *Michel*, Plaintiffs argue that it should have been "obvious" to Simon that the table top in its vertical position created a "hazard." Memo in Op, p. 8. If such a "hazard" was so obvious, then why wasn't it recognized by Mr. Gendrow? More importantly, even under the *Michel* standard, liability only attaches to an employer if it fails to warn of "defects existing before the work is started that are known to the employer, but are not readily observable by the employee." *Michel*, 59 Haw. at p. 57 If the "defect" were "obvious" as alleged by Plaintiffs, then *ipso facto* the defect must also have been "readily observable" by Mr. Gendrow. Either way, under *Michel*, liability cannot attach to Simon.

Moreover, citing an allegedly deficient lock-out/tag-out policy, Plaintiffs claim that Simon negligently failed "to warn Mr. Gendrow of the hazardous condition created by the raised table top." Memo in Op, p. 8.

---

[3] It was also recognized in *Taira* that the *Occupational Safety and Health Act* (including the standards promulgated under the Act) does not impose a separate duty of care on the employer.

Plaintiffs' allegation again begs the legal question. As made clear in both *Michel* and *Taira*, there is no duty to warn of "defects" which didn't exist prior to the start of the independent contractor's work. Prior to the start of Mr. Gendrow's work, there was no "danger" that the table top would involuntarily rotate from its vertical position to its horizontal position. That involuntary movement only became possible, for the first time, after Mr. Gendrow started his work and because of the manner in which he chose to do the work.

Plaintiffs try to avoid *Taira* by arguing that, in *Gendrow*, the table top was in the vertical position when Mr. Gendrow started his work. Memo in Op., p. 9. But the "danger" wasn't created by the configuration of the machine. The raised table top position is one of the machine's standard operating positions.[4] As in *Taira*, the "danger" arose out of the method chosen by the independent contractor to accomplish the work (i.e., the partial disassembly of the machine by Mr. Gendrow).

Plaintiffs assert that, unlike in *Taira*, there was evidence that Simon was advised of the manner in which the work was going to be done. Memo in Op, p. 9. However, the employer in *Taira*, unlike the employer in *Gendrow*,

---

[4] There's no reason Mr. Gendrow couldn't have rotated the table to its horizontal position in order to do his work.

periodically monitored the work being done by the independent contractor. 1 Haw.App. 208. The fact that the employer in *Taira* monitored the independent contractor's work made no difference to the Hawaii Intermediate Court of Appeals. What did matter was that (as in *Gendrow*) the employer did not control the work or direct how it was to be accomplished. In that regard, Simon submits that the material facts in *Taira* are almost indistinguishable from the undisputed facts in *Gendrow*.

### Simon's Duty to Provide a Safe Workplace

Finally, the gravamen of the Plaintiffs' claim is that Simon failed to provide Mr. Gendrow with a safe place to work. In Hawaii, an employer's duty to provide a safe place to work is statutory in origin. Conspicuously missing from the Plaintiffs' opposition papers is any discussion of §396-6, H.R.S., the statute which circumscribes the scope of a Hawaii employer's duty to provide a safe place to work.[5]

Under the statute, it is the employer's duty to provide a workplace which is free form "recognized hazards." As detailed in Simon's moving papers, a "recognized hazard" is a workplace condition or practice that is known to be

---

[5] Simon acknowledges that, under Hawaii law, the statutory duty to "employees" has been construed to encompass employees of independent contractors.

hazardous by either the industry in general or by the employer in particular.

In *Gendrow*, Plaintiffs claim that the workplace "hazard" was the danger posed by the table top in its vertical (or raised) position. Simon disagrees that the table top in the vertical position was inherently dangerous in any way. In fact, as designed, the vertical position of the table top is one of its two standard operating positions. However, even assuming *arguendo* that the vertical position of the table top (just by itself) constituted a "hazardous condition," there is absolutely no evidence that either the mattress manufacturing industry in general, or Simon in particular, actually knew or actually recognized the alleged hazardous nature of the table top in its vertical position.[6] Therefore, the Plaintiffs' allegation of Simon's failure to provide Mr. Gendrow with a safe workplace must fail as a matter of law.

Moreover, if the alleged workplace "hazard" is considered the potential for the table top to rotate involuntarily from the vertical position to the horizontal position when the table top motor is removed, then again there is absolutely no evidence that either the mattress manufacturing industry in general,

---

[6]  For that matter, the alleged "hazard" obviously wasn't recognized by Mr. Gendrow.

or Simon in particular, actually knew or recognized that "hazard."[7] Therefore, the Plaintiffs' allegation of Simon's failure to provide Mr. Gendrow with a safe workplace would again fail as a matter of law.

### Conclusion

For the above reasons, Simon respectfully submits that its Motion for Summary Judgment should be granted.

DATED: Honolulu, Hawaii; JAN 27 2006      .

_____
STEPHEN B. MacDONALD
RALPH J. O'NEILL

Attorneys for Defendant and Third-Party Plaintiff SIMON MATTRESS MANUFACTURING COMPANY

---

[7] For that matter, the alleged "hazard" obviously wasn't recognized by Mr. Gendrow (the person whose work created the hazard).

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DENISE GENDROW, individually and as Personal Representative of THE ESTATE OF CHARLES EUGENE GENDROW, JR.; CHARLES E. GENDROW III; and JEANNE SMITH;<br><br>Plaintiffs,<br><br>vs.<br><br>COYNE MATTRESS MANUFACTURING COMPANY; SERTA MATTRESS CORPORATION; JOHN DOES 1-10; DOE CORPORATIONS 2-10; DOE PARTNERSHIPS 1-10; DOE GOVERNMENTAL ENTITIES 1-10; DOE UNINCORPORATED ASSOC-TIONS 1-10;<br><br>Defendants.<br><br>_____<br><br>SIMON MATTRESS MANUFACTURING COMPANY,<br><br>Defendant and Third-Party Plaintiff,<br><br>vs.<br><br>DRC CORPORATION,<br><br>Third-Party | Civil No. CV03 00034 BMK<br><br>CERTIFICATE OF SERVICE |

Defendant.    )
_____)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the dated indicated below, a copy of the foregoing document was duly served by hand delivery/depositing said copy in the United States mail, postage pre-paid, addressed to the following at their last known address:

> CHRISTOPHER S. BOUSLOG, ESQ.
> Law Offices of Chris Bouslog
> Four Waterfront Plaza, Suite 480
> 500 Ala Moana Boulevard
> Honolulu, Hawaii  96813-4908
> Attorney for Plaintiffs DENISE GENDROW, Individually and as Personal Representative of THE ESTATE OF CHARLES EUGENE GENDROW, JR.; CHARLES E. GENDROW III; and JEANNE SMITH

> JAMES T. ESTES, JR., ESQ.
> Burke McPheeters Bordner & Estes
> Suite 3100 - Mauka Tower
> Pacific Guardian Cetner
> 737 Bishop Street
> Honolulu, Hawaii 96813
>    Attorney for Defendant and Third-Party Defendant
>    and Fourth-Party Plaintiff JAMES CASH
>    MACHINE CO.

DAVID M. LOUIE, ESQ.
Roeca Louie & Hiraoka
Davies Pacific Center
841 Bishop Street, Suite 900
Honolulu, Hawaii 96813
Attorney for Fourth-Party Defendant
A & B ELECTRIC CO., INC.


DATED: Honolulu, Hawaii;  JAN 2 7 2006  .


_____
STEPHEN B. MacDONALD
RALPH J. O'NEILL
Attorneys for Defendant and Third-Party
Plaintiff SIMON MATTRESS
MANUFACTURING COMPANY