LEXSEE 1995 U.S. DIST. LEXIS 19943

**MANUEL ARRENDONDO and IDELIA ARRENDONDO, husband and wife; and ALMA CORTEZ and RUDOLFO CORTEZ, husband and wife, Plaintiffs, v. THE UNIROYAL GOODRICH TIRE COMPANY, a Delaware corporation; THE B. F. GOODRICH COMPANY, a New York corporation; and PACE MEMBERSHIP WAREHOUSE, INC., a Colorado corporation, Defendants.**

No. CIV-93-1708-PHX-SMM

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

*1995 U.S. Dist. LEXIS 19943*

August 14, 1995, DATED
August 15, 1995, FILED

**DISPOSITION:** [*1] Defendants' Renewed Motion to Exclude Loren Forney GRANTED. Defendants' Motion for Summary Judgment GRANTED. Plaintiffs' Motion for Leave to File Second Amended Complaint DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff consumers sought damages from defendants, tire makers and a retail warehouse, for injuries received in an auto accident. Defendants removed the case to federal court and sought to exclude plaintiffs' expert witness. The court denied the motion, but ordered the expert to prepare a report of his findings. After amending with the report, plaintiffs filed for summary judgment and for leave to amend, and defendants renewed their motion.

**OVERVIEW:** After receiving injuries in an auto accident, plaintiffs sought to recover damages from defendants. The court granted defendants' motion to exclude plaintiffs' expert witness because, although plaintiffs met the minimum qualification requirements under *Fed. R. Evid. 702*, plaintiffs failed after numerous opportunities to demonstrate that their expert's conclusions were based on scientific and technical knowledge, that their expert was not assuming the role of an advocate, or that their expert was reliable. The court construed defendants' motion to dismiss as a motion for summary judgment and granted summary judgment to defendants because plaintiffs failed to provide any other evidence of a manufacturer defect other than their expert's opinions, which were excluded. The court denied plaintiffs' motion for leave to amend their complaint, holding that plaintiffs had almost a year's notice of other possible claims, and to allow them to amend would have been prejudicial to defendants. Moreover, plaintiffs should not be allowed to amend their complaint solely to avoid summary judgment.

**OUTCOME:** The court granted defendants' renewed motion to exclude plaintiffs' expert witness and defendants' motion for summary judgment, and denied plaintiffs' motion for summary judgment and plaintiffs' motion to amend their complaint in plaintiffs' action for recovery of damages incurred from an auto accident.

**CORE TERMS:** tire, sealant, scientific, summary judgment, methodology, amend, expert testimony, expert witness, qualification, unreliable, reliable, puncture, renewed, hole, admissible evidence, burden of proof, manufacturing, excluding, doctors, steel, trier of fact, unrepaired, manufacturing defect, belted, radial, unreasonably dangerous, informational, concede, repair, skill

**LexisNexis(R) Headnotes**

*Evidence > Witnesses > Expert Testimony*
[HN1] *Fed. R. Evid. 702* states that if scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

*Evidence > Witnesses > Expert Testimony*
[HN2] Once the expert's qualification is established, the trial court must determine whether the expert is planning to testify to scientific knowledge that will help the trier

of fact in understanding or determining a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts in issue. The trial court must determine that the experts based their conclusions on scientific methods and procedures rather than mere subjective beliefs or unsupported speculation. These preliminary questions must be established by a preponderance of the proof. The trial court must scrutinize an expert's reasoning and methods without inquiring into the soundness of the expert's conclusions.

*Evidence > Witnesses > Expert Testimony*
[HN3] In assessing the validity of a scientific theory or technique, the court should consider a number of factors: (1) whether the theory or technique can be and has been tested by other scientists; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has gained general acceptance in the relevant scientific community.

*Evidence > Witnesses > Expert Testimony*
[HN4] Expert testimony is not properly admitted if the expert is offered as an advocate rather than to provide a scientifically supported opinion.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN5] A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. Substantive law determined which facts are material. Only disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment. The dispute must also be genuine; that is, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A principle purpose of summary judgment is to isolate and dispose of factually unsupported claims. Summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. The moving party need not disprove matters on which the opponent has the burden of proof at trial. The party opposing summary judgment may not rest upon the mere allegations or denials of the party's pleadings, but must set forth specific facts showing that there is a genuine issue for trial.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
[HN6] Under *Fed. R. Civ. P. 15(c)*, after a responsive pleading has been served, a party may amend its pleading only by leave of the court or written consent of the adverse party; and leave shall be freely given when justice so requires. Although the R. 15(c) is to be construed liberally, leave to amend is not to be granted automatically. In determining whether the court should exercise its discretion to allow an amended complaint to be filed, the following factors should be considered: (1) whether the movant unduly delayed seeking the leave to amend; (2) whether there is any bad faith or dilatory motive on the part of the movant; (3) whether there have been repeated failures to cure deficiencies by amendments previously allowed; (4) whether the party opposing amendment would by unduly prejudiced by the amendment; and (5) whether amendment would be futile.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
[HN7] A motion for leave to amend is not a vehicle to circumvent summary judgment.

**COUNSEL:** For MANUEL ARREDONDO, husband, IDELIA ARREDONDO, wife, ALMA CORTEZ, wife, RUDOLFO CORTEZ, husband, plaintiffs: W. Daniel Shelton, Esq., Goldberg & Osborne, Tucson, AZ. William H. Ricker, Esq., Tucson, AZ.

For UNIROYAL GOODRICH TIRE COMPANY, a Delaware corporation, THE B F GOODRICH COMPANY, a New York corporation, defendants: Michael Lloyd McAllister, Esq., Brad Kevin Keogh, Esq., Nedra Jane Bates, Michael L. McAllister Ltd., Phoenix, AZ. For PACE MEMBERSHIP WAREHOUSE, INC., a Colorado corporation, defendant: Michael Lloyd McAllister, Esq., Nedra Jane Bates, Michael L. McAllister Ltd., Phoenix, AZ.

For PACE MEMBERSHIP WAREHOUSE, INC., cross-claimant: Nedra Jane Bates, Michael L. McAllister Ltd., Phoenix, AZ.

For B F GOODRICH COMPANY, cross-defendant: Michael Lloyd McAllister, Esq., Michael L. McAllister Ltd., Phoenix, AZ.

**JUDGES:** Stephen M. McNamee, United States District Judge

**OPINIONBY:** Stephen M. McNamee

**OPINION:**

## MEMORANDUM OF DECISION AND ORDER

### I. INTRODUCTION

On July 16, 1993, Plaintiffs [*2] filed this action in Arizona state court against Defendants Uniroyal Goodrich Tire Company, The B.F. Goodrich Company, and Pace Membership Warehouse. Plaintiffs alleged that they were injured in an automobile accident caused by a defective and unreasonably dangerous tire. On August 27, 1993, Defendants removed the claims to federal court.

On July 19, 1994, Defendants motioned to exclude the testimony of Mr. Loren Forney, Plaintiffs' expert witness, arguing that the conclusions drawn by Mr. Forney are inadmissible under *Federal Rule of Evidence 702* because they are circular, conclusory, and without reasoning. Defendants also moved to dismiss, arguing that exclusion of Mr. Forney's testimony would leave Plaintiffs without a prima facie case of strict products liability.

On October 26, 1994, the Court denied the motion to exclude Plaintiffs' expert witness. However, the court found that the Plaintiffs' expert report was deficient because of an insufficient showing of scientific methodology and reasoning. Thus, the Court further ordered Plaintiffs to produce a report prepared and signed by Mr. Forney setting forth the scientific methodology and reasoning that he employed in arriving [*3] at his conclusions about the cause of the tire failure. The Court gave explicit instructions about the requirements for the amended report.

On December 14, 1994, after reviewing Mr. Forney's revised report, Defendants renewed their motion to exclude Plaintiffs' expert witness and to dismiss. The Court construed Plaintiffs' Motion to Dismiss as one for summary judgment. Plaintiffs responded to the motion for summary judgment and also moved to amend their complaint. The motions are now fully briefed and ready for the Court's consideration.

### I. DISCUSSION

#### A. Motion to Exclude Expert Testimony

*Rule 702, Federal Rules of Evidence* provides:

> [HN1]
> If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The United States Supreme Court, in *Daubert v. Merrell Dow Pharmaceuticals Inc., 509 U.S. 579, , 125 L. Ed. 2d 469, 113 S. Ct. 2786, 2795-96 (1993)*, found that Rule 702 places an affirmative duty on the trial [*4] court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." The first step in this analysis is to determine whether the proposed expert should be qualified as an expert. Rule 702 governs the issue of qualification and "contemplates a broad conception of expert qualification." *Thomas v. Newton Int'l. Enters., 42 F.3d 1266, 1269 (9th Cir. 1994)*. As Rule 702 states, a person may be qualified as an expert by "knowledge, skill, experience, training, or education." As the advisory committee notes emphasize, Rule 702 "is broadly phrased and intended to embrace more than a narrow definition of a qualified expert." Id.

Mr. Forney lists amongst his qualifications as an expert his experience working with tires since 1960 and his examination of numerous tire failures. See Pls.' Statement of Facts ("SOF"), Ex. A, at 1. Since 1971, Mr. Forney has been the president of a tire consulting service to the tire industry. Id.

Defendants argue that Mr. Forney should not qualify as an expert because the last time Mr. Forney worked in the industry on the design or manufacturing of tires, steel belted radials were not yet being manufactured. [*5] Defendants do not claim that Mr. Forney does not have experience examining steel belted radial tire failures but rather focus on Mr. Forney's lack of knowledge about the current manufacturing process of steel belted radial tires. Plaintiffs, however, do not attempt to qualify Mr. Forney as an expert on the manufacturing process of steel belted radials, but merely as an expert on tire failure. Mr. Forney is qualified as an expert on tire failure due to his experience in that area. Thus, under the expansive interpretation of Rule 702, Plaintiffs meet at least the minimum level for establishing Mr. Forney's qualification to give expert testimony as to the failure of tires. See *Thomas, 42 F.3d at 1269*.

[HN2] Once the expert's qualification is established, the trial court must determine whether the expert is planning to testify to scientific knowledge that will help the trier of fact in understanding or determining a fact in issue. *Daubert, 509 U.S. 579, 113 S. Ct. 2786, 2795-96, 125 L. Ed. 2d 469*. "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts in is-

Case 1:03-cv-00034-BMK    Document 193-10    Filed 02/15/2006    Page 4 of 11

Page 4
1995 U.S. Dist. LEXIS 19943, *

sue." Id. The [*6] trial court must determine that the experts based their conclusions on scientific methods and procedures rather than mere subjective beliefs or unsupported speculation. Id. at 2795. These preliminary questions must be established by a preponderance of the proof. Id. Yet, the trial court must scrutinize an expert's reasoning and methods without inquiring into the soundness of the expert's conclusions. *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 501 (9th Cir. 1994).

[HN3] In assessing the validity of a scientific theory or technique, the court should consider a number of factors:

> (1) whether the theory or technique 'can be (and has been) tested' by other scientists;
>
> (2) whether it has been subjected to peer review and publication;
>
> (3) the known or potential rate of error;
>
> (4) the existence and maintenance of standards controlling the technique's operation; and
>
> (5) whether the technique has gained general acceptance in the relevant scientific community.

*United States v. Jones*, 24 F.3d 1177, 1179 (9th Cir.), cert. denied, 115 S. Ct. 605 (1994) (citing *Daubert*, 509 U.S. 579, 113 S. Ct. 2786, 2796-97, 125 L. Ed. 2d 469). However, this is merely an illustrative list; [*7] many other factors will bear on the court's determination depending on the specific facts of each case. *Daubert*, 113 S. Ct. at 2796.

[HN4] Expert testimony is not properly admitted if the expert is offered as an advocate rather than to provide a scientifically supported opinion. See *United States v. Rincon*, 28 F.3d 921, 923 (9th Cir. 1994). In Rincon, a criminal defendant charged with bank robbery offered an expert to testify regarding the psychological process of eye-witness identification and the effects of stress and race on that process. Id. at 923. The trial court noted that the expert's opinions were backed by such statements as: "there is a wealth of research supporting this point, ..."; "the research is clear ..."; and "the research suggests ...." Id. at 924. However, the research referenced was not initially submitted or described in detail. Id. Accordingly, the trial court excluded the proffered expert testimony. Id.

After an appeal to and affirmance by the Ninth Circuit, the Supreme Court remanded Rincon for consideration of the principles set forth in Daubert. Id. at 923. On remand, the defendant supplemented the record with a published article [*8] that supported claims that the defendant's expert would testify to. Id. Yet, the studies were not described in sufficient detail. Id. The trial court again excluded the testimony, finding that it would likely mislead the jury. Id. at 924-25. The Ninth Circuit affirmed the exclusion of the expert testimony. Id. The Ninth Circuit held that a balance must be struck between admitting reliable, helpful expert testimony and excluding misleading, unreliable, or confusing testimony to achieve the flexible approach outlined in Daubert. Id.

Likewise, in Claar, the Ninth Circuit applied the Daubert analysis in affirming an order excluding medical expert testimony. 29 F.3d 499, 500-03. The plaintiffs in Claar sued their former employer alleging that chemicals in the workplace caused them to become ill. Id. at 500. Concerned with the plaintiffs' ability to show causation, the trial court ordered plaintiffs to submit affidavits from doctors listing each injury and the scientific basis for the conclusions. Id.

The trial court found the submitted affidavits deficient because they failed to demonstrate the scientific basis for the conclusions. Id. The trial [*9] court ordered a second round of affidavits, directing the doctors to explain the basis for their opinions. Id. After finding that the new affidavits still lacked an explanation of the doctors' reasoning and methods, the trial court excluded them for lack of foundation and reliability. Id.

In affirming the trial court's order, the Ninth Circuit noted that the court made repeated attempts to allow the experts to explain their underlying reasons and methods. Id. at 502. The Ninth Circuit held that the trial court's additional findings that the affidavits failed to rule out other possible causes of the plaintiffs' injuries and were prepared before the doctors had read relevant literature and medical histories further justified exclusion of the affidavits. Id.

Although these cases demonstrate the court's ability to exclude expert testimony, "Daubert cautions lower courts not to confuse the role of judge and jury by forgetting that vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof,' rather than exclusion, 'are the traditional and appropriate means of attacking shaky but admissible evidence.'" *United States* [*10] *v. Chischilly*, 30 F.3d 1144, 1154 (9th Cir. 1994), cert. denied, 130 L. Ed. 2d 890, 115 S. Ct. 946 (1995) (quoting *Daubert*, 509 U.S. 579, 113 S. Ct. 2786, 2798, 125 L. Ed. 2d 469). Yet, the trial judge must ensure that "any and all scientific testi-

mony is not only relevant, but reliable." *Rincon, 28 F.3d at 923* (citing *Daubert, 113 S. Ct. at 2795*).

In the instant case, Defendants argue that Mr. Forney's report lacks any valid scientific methodology or reasoning and is unreliable. Mr. Forney has had numerous opportunities to amend his report so that it conforms to Rule 702. See Order entered Oct. 26, 1994, at 5-6. Summarizing Mr. Forney's report, he claims that:

> (1) the tire did not fail due to underinflation or overinflation as indicated by the lack of indentions or pressure grooves worn into the beads or lower side walls;
>
> (2) the tire did not fail as a result of the vulcanized rubber repair at "6:00 O'Clock" as demonstrated by the lack of physical evidence of air leaks from the repair;
>
> (3) the tire did not fail from the unrepaired, no patch or plug, hole at "11:30 O'Clock" because there was no deterioration around the hole which would have been evident in the form of rings to any [*11] experienced tire expert;
>
> (4) the use of tire sealant did not allow any air to migrate into the tire based on his eight years experience with sealants and based on tests that he personally carried out consisting of driving nails into truck tires and observing that those tires never failed; and
>
> (5) if the sealant was a proximate cause of the tire failure, the tire contained an information defect because the tire did not contain a warning that tire sealants should not be used with the tire.

Defs.' Renewed Mot., Ex. C, at 5-9.

Mr. Forney relies on his experience as his basis for each of his conclusions. Mr. Forney does not cite to any industry standards, manufacturing data, outside studies, documentary research, published articles, or treatises that would support any of his work. Mr. Forney relies exclusively on his experience in the field and years of examining tires to support all of his findings. Defs.' Renewed Mot., Ex. C, at 5-9. Mr. Forney simply bases his conclusions on the fact that he has gone through "many, many tires that have failed." Defs. SOF, Ex. B, at 124. Mr. Forney freely admits that he has examined only tires that were sent to him after failure and [*12] that he has not purposefully failed tires to study, has not run a control group, and has not conducted research in a lab or on drums. Id. Mr. Forney further concedes that the results of his examination are not readily capable of duplication Id. at 97-102.

An expert witness's technical experience should be given significant weight in determining that witness's qualification as an expert. See *Thomas, 42 F.3d 1266, 1269* (longshoreman's twenty-nine years of experience on vessels qualified him to testify regarding hazards of unguarded, uncovered manhole near bottom of access ladder). Further, if a witness is testifying to purely technical, non-scientific information, the testimony "need only be linked to some body of specialized knowledge or skills." *Id. at 1270 n.3*. If, however, an expert witness's testimony relates to scientific information, the testimony must be linked in some fashion to the scientific method." Id.

Here, Mr. Forney proposes to testify to the adhesive qualities of the tire, the efficacy and characteristics of vaporous sealants, and the effects of underinflation, amongst other things. Such testimony requires a link to a scientific method, which incorporates [*13] manufacturing data, test results, or the like.

Even crediting Mr. Forney with for his years of technical experience, his assertions are conclusory and remain unreliable. In sum, Mr. Forney asserts that the tire had a defect because the belts separated. Defs'. SOF, Ex. B, at 108-111. Mr. Forney is unable to suggest, however, what specifically in the manufacturing or design process caused the belts to separate. Mr. Forney suggested that defects can occur due to incompatibility of materials and improper temperature during calendaring. Id. at 109. Mr. Forney concedes, however, that he has not witnessed or been involved with a modern calendaring process in a tire plant and does not know what chemical compounds are used in the manufacture of a tire. Id. at 59-66.

Mr. Forney contradicts himself in his own assertions about the tire failure. He first asserts that the sealant in the tire was not a factor in the failure of the tire. Defs.' Renewed Mot., Ex. C, at 8. Next, he goes on to concede that if it was a cause in the failure of the tire, then an informational defect exists with respect to the tire. Defs' Renewed Mot. Ex. C, at 9. Clearly, the evidence that Mr. Forney observes [*14] on the tire either supports or opposes the proposition that the tire sealant was a factor in the failure of this tire. However, Mr. Forney cannot decide which is the case. Proper application of scientific methodology cannot support alternative positions in this situation. This complete lack of decision shows unreliability in Mr. Forney's methodology and conclusions.

Case 1:03-cv-00034-BMK    Document 193-10    Filed 02/15/2006    Page 6 of 11

Page 6
1995 U.S. Dist. LEXIS 19943, *

Mr. Forney has also provided contradictory statements under oath. On March 1, 1994, in a deposition for a tire failure case, Mr. Forney, as the Plaintiffs' expert witness, testified that a tire sealant can interfere with a tire repair and cause the tire to blow. See Defs.' SOF, Ex. D at 35. Mr. Forney stated, "I don't basically approve of the use of sealants." Id. Surprisingly, only ten months later on January 19, 1995, in Mr. Forney's deposition in the instant case, he testified that he "had excellent results with tire sealants at 75 miles an hour for long extended periods of time and no problems whatsoever." Id., Ex. B, at 153-54. Such contradictions can only lead the Court to conclude that Mr. Forney is assuming the role of an advocate in this situation rather than giving scientific information to the Court. [*15] See *Rincon, 28 F.3d at 923*. In light of these facts, Mr. Forney's report appears completely unreliable in presenting unbiased scientific evidence that would assist in the analysis of the failed tire.

Further, Mr. Forney exhibited an inability to apply his own methodology in a reliable fashion by overlooking key elements in his initial analysis of the failed tire. Mr. Forney, after his first examination of the failed tire, did not discover a second unrepaired puncture hole in the tire. See Defs.' Initial Mot., Ex. A, at 13. After this error was pointed out by Defendants' expert witness, Mr. Forney explained that he "probably was so damn busy or so busy that [he] overlooked it...." Defs.' SOF, Ex. B, at 178. Mr. Forney subsequently reexamined the tire. Although the puncture hole was unsealed at this second examination, Mr. Forney concluded from his memory that the puncture was sealed with sealant during his first investigation. See Defs.' SOF, Ex. B, at 142-44. Mr. Forney makes this claim even though his first report made absolutely no mention of either sealant or the unrepaired puncture. See Defs.' Initial Mot., Ex. A, at 13. Moreover, Mr. Forney has no photographs [*16] to support his statement.

Finally, and most importantly, Mr. Forney does not even attempt to demonstrate to the Court how he arrives at his conclusions. Mr. Forney states that his report considers factors that are: "well known in the tire industry"; "would be obvious"; and are "easily detected and observed by any experienced tire expert." Defs.' Renewed Mot., Ex. C, at 7-8. However, Mr. Forney does not make a single reference to any authority for any of his assertions. There is no evidence that Mr. Forney based his assertions on anything more than his own "subjective belief" and personal "speculation". See *Claar 29 F.3d at 502* (applying Daubert principles). On the other hand, Defendants' experts make reference to tire service manuals, industry reports, and personal research that is published to substantiate their conclusions. See Defs.' SOF, Ex. F-K.

Therefore, this Court must grant Defendants' Motion to Exclude Mr. Forney on the grounds that Plaintiffs have failed to provide sufficient evidence to show that Mr. Forney bases his conclusions on reliable scientific or technical knowledge that will assist the trier of fact. Mr. Forney's report demonstrates that he is taking [*17] an adversarial position rather than offering scientific knowledge to assist the jury in understanding an issue in controversy. Mr. Forney has misapplied his own claimed methodology. Mr. Forney has also given conflicting testimony about the use of tire sealants. Simply put, Mr. Forney has not made a sufficient showing of reliability.

Although Plaintiffs suggest that these conflicting statements are proper subjects for cross-examination, such is not the case. This Court is not excluding Mr. Forney merely on the ground that he is unreliable and has contradicted his own testimony, but additionally, because Mr. Forney has failed to substantiate, with references to any type of standard, how he arrived at his conclusions. Rule 702 "confides to the judge some gatekeeping responsibility." Daubert, S. Ct. at 2794 n.7. This Court fulfills its responsibility by excluding Plaintiffs' expert witness, Mr. Forney.

B. Motion for Summary Judgement

*1. Standard of Review*

[HN5] A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "shows that there is no genuine issue as to any material fact and that the moving [*18] party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)* (1995); see *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. Substantive law determined which facts are material. *Anderson v. Liberty Lobby, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. "Only disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." Id. The dispute must also be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A principle purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex, 477 U.S. at 323-24*. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id. at 322*. The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Id. at 317*. The party opposing summary judgment "may not rest upon the mere allegations or denials of [the [*19] party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e)*; see also *Matsu-

Case 1:03-cv-00034-BMK   Document 193-10   Filed 02/15/2006   Page 7 of 11

Page 7
1995 U.S. Dist. LEXIS 19943, *

shita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-88, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).

2. Discussion and Conclusion

In this case, under the theory of strict liability as set forth in Restatement (Second) of Torts, § 402A (1965), Plaintiffs have the burden of proving that the tire was defective and unreasonably dangerous. Dietz v. Waller, 141 Ariz. 107, 685 P.2d 744, 747 (1984). A plaintiff must present enough evidence that the trier of fact can reasonably infer that it is more probable than not that the product is defective. Id.

Because Plaintiffs' expert Mr. Forney has been excluded from testifying, his opinions do not constitute admissible evidence in opposition to Defendants' Motion for Summary Judgment. Plaintiffs have not offered any other admissible evidence to prove a manufacturing defect. Although, in the absence of abnormal use or reasonable secondary causes, a product malfunction itself may be sufficient evidence to make the existence of a defect a question for the jury, Ruiz v. Otis Elevator, [*20] 146 Ariz. 98, 703 P.2d 1247, 1251 (Ariz. Ct. App. 1985), this principle cannot apply in the instant case because Defendants have introduced evidence of misuse and secondary causes. Specifically, Defendants have introduced expert testimony indicating that the tire had two puncture holes, one of which was completely unrepaired and one of which had been closed with a sealant. Defs.' SOF, Ex A, 23-24. Defendants have further introduced expert testimony indicating that the tire had been operated while it was severely underinflated. Id. at 24. Plaintiffs' have not offered any admissible evidence to dispute this or to demonstrate a manufacturing defect that existed in the tire that failed. Therefore, Defendants' Motion for Summary Judgment is granted.

C. Motion to Amend Complaint

Plaintiffs seek to amend their complaint to state a claim for an informational defect. [HN6] Under Federal Rules of Civil Procedure 15(c), after a responsive pleading has been served, "a party may amend [its] pleading only by leave of the court or written consent of the adverse party; and leave shall be freely given when justice so requires." Though the rule is to be construed liberally, "leave to amend is not to be [*21] granted automatically." Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990).

In determining whether the Court should exercise its discretion to allow an amended complaint to be filed, the Supreme Court has stated that the following factors should be considered:

(1) whether the movant unduly delayed seeking the leave to amend;

(2) whether there is any bad faith or dilatory motive on the part of the movant;

(3) whether there have been repeated failures to cure deficiencies by amendments previously allowed;

(4) whether the party opposing amendment would by unduly prejudiced by the amendment; and

(5) whether amendment would be futile.

Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962).

Plaintiffs have significantly delayed in moving to amend their complaint. Plaintiffs initiated this action in state court on July 19, 1993, and submitted an amended complaint on August 19, 1993. On August 25, 1993, Defendants removed the case to federal court. As of June 24, 1994, Plaintiffs had notice that their expert, Mr. Forney, found evidence of tire sealant in the tire. Thus, Plaintiffs could have moved to amend their complaint [*22] at that time to allege an informational defect with respect to the hazards of tire sealants. Defs.' Initial Mot., Ex. B. However, Plaintiffs did not seek leave to amend until March 23, 1995 -- almost one year later and after the close of all discovery. Allowing Plaintiffs leave to amend their complaint at this juncture to add a completely new legal theory will subject Defendants to added expense and time that could have been avoided with a timely motion for leave to amend.

Further, Plaintiffs filed a motion to amend only after Defendants had sought summary judgment on their claims alleging a manufacturing defect. [HN7] "A motion for leave to amend is not a vehicle to circumvent summary judgment." Schlacter-Jones v. General Telephone, 936 F.2d 435, 443 (9th Cir. 1991).

Moreover, if Plaintiffs were allowed to amend their complaint, they would have the burden to prove that although the tire was manufactured without a defect, the product was unreasonably dangerous because it was placed in the hands of a consumer without suitable warnings. See Brown v. Sears Roebuck & Co., 136 Ariz. 556, 667 P.2d 750, 756 (Ariz. Ct. App. 1983). Plaintiffs, however, do not present any evidence, other [*23] than Mr. Forney's conclusions, which this Court has excluded, to meet their burden of proof. Accordingly, the Court finds that the proposed amendment would be futile.

III. CONCLUSION AND ORDER

For the reasons set forth above,

IT IS THEREFORE ORDERED that Defendants' Renewed Motion to Exclude Loren Forney is GRANTED. [Doc #73]

IT IS FURTHER ORDERED that the Defendants' Motion for Summary Judgment is GRANTED. [Doc #73]

IT IS FURTHER ORDERED that the Plaintiffs' Motion for Leave to File Second Amended Complaint is DENIED. [Doc #91]

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment accordingly.

DATED this 14 day of August.

Stephen M. McNamee

United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DENISE GENDROW, Individually and as Personal Representative of THE ESTATE OF CHARLES EUGENE GENDROW, JR.; CHARLES E. GENDROW, III,<br><br>  Plaintiffs,<br><br>vs.<br><br>SIMON MATTRESS MANUFACTURING COMPANY dba SERTA MATTRESS COMPANY dba COYNE MATTRESS MANUFACTURING COMPANY; JAMES CASH MACHINE CO.,<br><br>  Defendants. | CIVIL NO. CV03 00034 BMK (Other Non-Vehicle Tort)<br><br>CERTIFICATE OF SERVICE |
| SIMON MATTRESS MANUFACTURING COMPANY,<br><br>  Defendant and Third-Party Plaintiff,<br><br>vs.<br><br>JAMES CASH MACHINE CO., a Kentucky Corporation,<br><br>  Third-Party Defendant. | |

| | |
|---|---|
| JAMES CASH MACHINE CO., a Kentucky Corporation,<br><br>        Defendant and<br>        Fourth-Party<br>        Plaintiff,<br><br>vs.<br><br>A & B ELECTRIC CO., INC., a Hawaii Corporation,<br><br>        Fourth-Party<br>        Defendant. | |

## **CERTIFICATE OF SERVICE**

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing document was served on the following at their last known addresses:

Served by Hand Delivery:

CHRISTOPHER S. BOUSLOG, ESQ.        February 15, 2006
Four Waterfront Plaza, Suite 480
500 Ala Moana Boulevard
Honolulu, Hawaii 96813

    Attorney for Plaintiffs

| | |
|---|---|
| STEPHEN B. MacDONALD, ESQ.<br>RALPH J. O'NEILL, ESQ.<br>JULIA H. PARK, ESQ.<br>ASB Tower, Suite 2650<br>1001 Bishop Street<br>Honolulu, Hawaii 96813 | February 15, 2006 |

    Attorneys for Defendant
    and Third-Party Plaintiff
    SIMON MATTRESS
    MANUFACTURING COMPANY

| | |
|---|---|
| DAVID M. LOUIE, ESQ.<br>JAMES SHEN, ESQ.<br>Roeca Louie & Hiraoka<br>841 Bishop Street, Suite 900<br>Honolulu, Hawaii 96813 | February 15, 2006 |

    Attorneys for Fourth-Party Defendant
    A & B ELECTRIC CO., INC.

DATED: Honolulu, Hawaii, February 15, 2006.

_____
WILLIAM A. BORDNER
JAMES T. ESTES, JR.
DAVID Y. SUZUKI
JOHN L. TATE
SARAH G. CRONAN
Attorneys for Defendant, Third-Party
Defendant and Fourth-Party Plaintiff
JAMES CASH MACHINE COMPANY, INC.